**BROWN GOLDSTEIN LEVY**

September 8, 2020

**BY ECF**
Hon. Deborah L. Boardman
United States Magistrate Judge
United States District Court for the District of Maryland
101 West Lombard Street, Chambers 3C
Baltimore, Maryland 21201

        Re:   *The Estate of Malcolm J. Bryant v. Baltimore City Police Dep't, et al.*,
              No. 1:19-cv-00384-ELH

Dear Judge Boardman:

       Pursuant to the Court's Letter Order of September 1, 2020 (ECF No. 97), Plaintiff submits this letter to address the issues regarding Tyeisha Powell's October 14, 2020, deposition and the contention interrogatories propounded by Defendant William Ritz. The Court's Order also ordered the Parties, in their letter submissions, to address the privilege issues raised in Defendants' August 31, 2020, status report (ECF No. 96). However, following a meet and confer on September 3, 2020, the Parties agreed that it would be more productive and efficient if they first engaged in additional discussions to attempt to narrow any disputes about privilege before further addressing these issues with the Court. The Parties are scheduled to have another meet and confer on September 10, 2020. The Parties will inform the Court of any outstanding privilege issues following that meet and confer.

     I.     **Deposition of Tyeisha Powell**

       Both Plaintiff and Defendant agree that the first to serve with a deposition subpoena should be the first to question the witness at a deposition. Although Defendants sought to gain litigation advantage by sending an early deposition notice to non-party witness Tyeisha Powell, they did not complete proper service under the federal rules. Because Plaintiff was the first party to perfect service of a deposition subpoena on Ms. Powell, Plaintiff's counsel should question Ms. Powell first at her deposition, currently scheduled for October 14, 2020.

       Ms. Powell was with Toni Bullock when she was attacked but managed to escape. Defendant Ritz interviewed Ms. Powell and obtained the misidentification of Mr. Bryant, which became the sole evidence presented at trial linking Mr. Bryant to the murder. Ms. Powell is thus an important witness in this case, but as it is Plaintiff's understanding that Ms. Powell will not voluntarily speak to either side, both Plaintiff and Defendants have long intended to take her deposition.

       On May 19, 2020, shortly after discovery opened and before Defendants had produced any documents, Diana Hairston, a paralegal with counsel for the Individual Defendants, emailed a deposition subpoena to Candes Daniels, counsel for Ms. Powell, purporting to set Ms. Powell's

The Honorable Deborah L. Boardman
September 8, 2020
Page 2

---

deposition for July 27, 2020,[1] but stating "[i]f for any reason this date is not good for all parties, feel free to let us know and we will reschedule." Ex. 1, May 19, 2020, email chain. Ms. Hairston forwarded the email sent to Ms. Daniels to all counsel that same day. *Id.*

On May 27, 2020, Plaintiff personally served Ms. Powell with a deposition subpoena, setting her deposition for July 30, 2020, along with payment of the required witness and mileage fees. Ex. 2, May 27, 2020, cover letter and subpoena to T. Powell. After learning Ms. Daniels would be away on military orders until mid-September, the Parties conferred and agreed on an October 14, 2020, date for Ms. Powell's deposition—while noting the Parties had a disagreement as to who had first perfected service and therefore who would question first. Ex. 3, July 2, 2020, email chain among all counsel. Although Ms. Powell was already under Plaintiff's subpoena, out of an abundance of caution, on July 14, 2020, Plaintiff inquired as to whether Ms. Daniels would accept service of a renewed deposition subpoena for Ms. Powell, noting the new deposition date of October 14. Ex. 4, July 14, 2020, email chain between J. Zachariasiewicz and C. Daniels; Ex. 5, renewed subpoena to T. Powell. Ms. Daniels agreed in writing to accept service, Ex. 4, and the same day Plaintiff's counsel notified Defendants' counsel that the renewed deposition subpoena had been served, Ex. 6, July 14, 2020, email from J. Zachariasiewicz to all counsel. To Plaintiff's knowledge, Defendants have not served a renewed deposition subpoena on Ms. Powell or Ms. Daniels with the October 14 date.

Pursuant to Federal Rule of Civil Procedure 45, to be enforceable a subpoena must be personally served, along with the appropriate witness and mileage fees. Fed. R. Civ. P. 45(b)(1) ("Serving a subpoena requires delivering a copy to the named person and, if the subpoena requires that person's attendance, tendering the fees for 1 day's attendance and the mileage allowed by law."); *see also, e.g.*, *In re Dennis*, 330 F.3d 696, 704 (5th Cir. 2003) ("[P]roper service requires not only personal delivery of the subpoena, but also tendering of the witness fee and a reasonable mileage allowance."); *Call of the Wild Movie, LLC v. Does 1-1,062*, 770 F. Supp. 2d 332, 362 (D.D.C. 2011); *Ilinca v. Bd. of Coop. Educ. Servs., Nassau*, No. 5:15-MC-87-JG, 2015 WL 8490979, at *1 (E.D.N.C. Dec. 10, 2015) ("A subpoena must be served on the person to whom it is addressed in order to have binding effect on that person."); 9A Fed. Prac. & Proc. Civ. § 2454 (3d ed.) ("The longstanding interpretation of Rule 45 has been that personal service of subpoenas is required." (collecting cases)). Thus, courts have held invalid subpoenas served by alternative means, such as certified mail, facsimile, and e-mail. *See, e.g.*, *Hurshman by Hurshman v. Saint Mary Help of Christians Catholic Sch.*, No. CV 1:03-2643-RBH-BM, 2006 WL 8445349, at *1 (D.S.C. Feb. 17, 2006); *Bergeron v. Great W. Cas. Co.*, No. CIV.A. 14-13,

---

[1] This early emailed notice was apparently intended to give Defendants priority in questioning when the deposition was eventually set; it does not appear Defendants wished to take Ms. Powell's deposition at that time. Indeed, in a status report filed three months later on August 21, 2020, Defendants stated their position "that the noticing of depositions is premature in this case given the very substantial outstanding document production issues." ECF No. 94 at 4.

The Honorable Deborah L. Boardman
September 8, 2020
Page 3

---

2015 WL 5307685, at *3 (E.D. La. Sept. 10, 2015); *Farley-Skinner v. Adventure Aquarium, LLC*, No. 117CV04797RBKKMW, 2018 WL 3647209, at *2 (D.N.J. Aug. 1, 2018); *Bonnecaze v. Ezra & Sons, LLC*, No. CV 14-1774, 2016 WL 1268339, at *4 (E.D. La. Mar. 31, 2016). "Courts typically require a party seeking leave to serve by alternative means 'to demonstrate a prior diligent attempt[s] to personally serve' before permitting substituted service under Rule 45." *Sec. & Exch. Comm'n v. Pence*, 322 F.R.D. 450, 454 (S.D.N.Y. 2017) (citation omitted); *see also Hinrichsen v. Quality Loan Serv. Corp.*, No. 16CV690-DMS(BLM), 2017 WL 5759829, at *2 (S.D. Cal. Nov. 27, 2017); *Burnett v. Wahlburgers Franchising LLC*, No. 16CV4602WFKCLP, 2018 WL 10466827, at *1 (E.D.N.Y. Oct. 4, 2018).

  Here, the Individual Defendants made no effort to personally serve Ms. Powell. Moreover, to Plaintiff's knowledge, they did not seek Ms. Daniels's express written consent to accept service on Ms. Powell's behalf via email, nor did they tender payment of the fees required by Rule 45.[2] By contrast, Plaintiff personally served Ms. Powell with a subpoena and payment of the witness and mileage fees. It was only after Ms. Powell had been personally served and had agreed through counsel to a rescheduled deposition date that Plaintiff served Ms. Daniels with a renewed subpoena via email, seeking her express consent to such alternative means of service. *See Aiken Hosp. Grp., LLC v. HD Supply Facilities Maint., Ltd.*, No. 1:16-CV-03093-JMC, 2018 WL 2057388, at *2 (D.S.C. May 3, 2018) (noting deponent "consented in writing to receive service of the deposition notice and subpoena by e-mail").

  Rule 45 has been amended multiple times over the past 20 years, as electronic communication has become more and more prevalent, yet the method of service permitted by the Rule has not changed. *See Bank of Oklahoma, N.A. v. Arnold*, No. 06-CV-543-GKF-PJC, 2008 WL 482860, at *3 (N.D. Okla. Feb. 20, 2008). Only Plaintiff properly perfected service on Ms. Powell; certainly, Plaintiff was the first to do so. Accordingly, Plaintiff's counsel should question Ms. Powell first at her October 14 deposition.

  II.  <u>**Contention Interrogatory Nos. 9, 14, and 15.**</u>

  On May 8, 2020, at the beginning of discovery, Defendant Ritz propounded nineteen interrogatories on Plaintiff, including the following three contention interrogatories:

> Interrogatory No. 9: Is it your contention that Detective Ritz was not entitled to rely upon the statements made by Tyesha [sic] Powell during the December 1, 1998 interview or

---

[2] Plaintiff notes that Rule 5, which governs service and filing of pleadings and other papers more generally, permits service by electronic means only if the person served has consented to such service in writing. *See* Fed. R. Civ. P. 5(b)(2)(E). The Advisory Committee Note to the 2001 Amendment to Rule 5 states that "the consent must be express, and cannot be implied from conduct."

The Honorable Deborah L. Boardman
September 8, 2020
Page 4

---

> any other statement or identification, which inculpated Malcolm Bryant in the homicide of Toni Bullock? If the answer to this interrogatory is anything other than an unqualified "no", state each and every fact, and identify all documents, upon which you base your contention.
>
> Interrogatory No. 14: Identify the complete factual basis for the contention in paragraph 58 that Detective Ritz never disclosed a December 29 interview with John Doe's father to the prosecutor, Mr. Bryant's defense attorney, or Mr. Bryant.
>
> Interrogatory No. 15: Identify the complete factual basis for the contention in paragraph 72 of the Complaint that "Detective Ritz never disclosed the report of this second potential witness named Tyeisha, nor her account of the crime which contradicted Ms. Powell's account to the prosecution, Mr. Bryant's counsel, or Mr. Bryant. None of the 911 call reports was disclosed."

*See* Ex. 7, Excerpts from Plf.'s Resps. and Objections to Def. Ritz's Interrogs. Plaintiff objected that "answers to [these] contention interrogatories at this stage of discovery are likely to require multiple supplemental answers, which are unduly burdensome, or prematurely commit Plaintiff to positions and artificially narrow the issues in this case," and that "[e]arly answers to [the] interrogator[ies], therefore, [would] not efficiently advance litigation." Plaintiff cited to three in-circuit cases to support its position that answers to these contention interrogatories should be deferred until the end of discovery. *See Par Pharmaceutical, Inc. v. Twi Pharmaceuticals, Inc.*, No. CCB-11-2466, 2012 WL 12548935, at *1 (D. Md. Oct. 4, 2012) (Grimm, J.); *BB&T Corp. v. United States*, 233 F.R.D. 447, 450 (M.D.N.C. 2006); *Taggart v. Damon Motor Coach*, No. 5:05-CV-00191, 2007 WL 152101, at *8 (N.D.W. Va. Jan. 17, 2007).

  The Parties do not dispute that Interrogatory Nos. 9, 14, and 15 are contention interrogatories.[3] Nor is there a dispute that Defendants may pose contention interrogatories at some point in the litigation. The sole issue in dispute is *when* Plaintiff should be required to answer such interrogatories.

  Fourth Circuit case law is clear—"contention interrogatories often are more burdensome than those simply calling for recitation of facts, and frequently they are deferred until after discovery is finished, or nearly so." *Par Pharmaceutical, Inc.*, 2012 WL 12548935, at *1 (delaying a response to a contention interrogatory until 30 days after the deadline for completion of expert discovery); *In re Smith & Nephew Birmingham Hip Resurfacing Hip Implant Prod.*

---

[3] The Court addressed the Parties' dispute regarding Plaintiff's response to Defendant Ritz's Interrogatory No. 10 during the September 1, 2020, status conference. Plaintiff did not object to this interrogatory as a contention interrogatory, is not withholding any information, and agreed to supplement its response if it learned of additional responsive information.

The Honorable Deborah L. Boardman
September 8, 2020
Page 5

---

*Liab. Litig.*, No. 1:17-MD-2775, 2020 WL 3469671, at *2 (D. Md. June 25, 2020) (delaying responses to contention interrogatories for almost two months); *Capacchione v. Charlotte-Mecklenburg Schools*, 182 F.R.D. 486, 489–90 (W.D.N.C. 1998) (delaying responses to contention interrogatories until "at or near" the expert report deadline). Courts recognize that early answers to contention interrogatories "serve little use" and that "[w]here significant discovery has not occurred, a [request] to compel contention interrogatories should be denied without prejudice." *Taggart*, 2007 WL 152101, at *8 (citation omitted).

That is exactly the case here. No depositions have occurred, significant document productions are outstanding, and expert report deadlines are at least a month away.[4] As a result, any answer Plaintiff would provide to contention interrogatories at this stage would be subject to so much potential revision as to "serve little use." *Taggart*, 2007 WL 152101, at *8. For instance, stating "each and every fact" and identifying "all documents" concerning whether "Detective Ritz was [] entitled to rely" on the December 1, 1998, interview of Tyeisha Powell or "any other statement or identification," as requested in Interrogatory No. 9, makes no sense before Plaintiff has deposed either Ms. Powell or Detective Ritz, or received evidence from the State's Attorney's Office file of its recent interviews with Ms. Powell. Moreover, responding to this interrogatory now would be extraordinarily burdensome, as it requests a comprehensive list of "each and every fact" and "all documents" in support of Plaintiff's contention (a list that Plaintiff will have to update after relevant deposition and document discovery). Similarly, any response providing the "complete factual basis" for its contentions that Defendant Ritz never disclosed certain evidence "to the prosecutor, Mr. Bryant's defense attorney, or Mr. Bryant," as requested in Interrogatory Nos. 14 and 15, will be woefully incomplete before Plaintiff has received the entire Baltimore City State's Attorney's Office file, including the original trial file (which the State's Attorney's Office is likely to contest having to produce). Requiring responses to such interrogatories now will impose substantial burden on Plaintiff without providing attendant benefit to Defendants.

Even *In re Convergent Technologies Securities Litigation*, 108 F.R.D. 328 (N.D. Cal. 1985)—the out-of-circuit case on which Defendants' position is primarily based—aligns with Plaintiff's position. While the court held that "*[i]n [that] court*," early answers to contention interrogatories may be compelled if the answers would "contribute meaningfully to clarifying the issues in the case, narrowing the scope of the dispute, or setting up early settlement discussions," it did so after noting that "there is considerable . . . authority for the view that the wisest general policy is to defer propounding and answering contention interrogatories until near the end of the discovery period" and that the court would "look with considerable skepticism at sets of contention interrogatories, filed early in the pretrial period, that simply track all the allegations in an opponent's pleading." *Id.* at 336, 338–39. That is what Defendant Ritz has done here.

---

[4] The Parties jointly submitted a proposed extension to the discovery schedule today which, if approved, would move Plaintiff's initial expert disclosure deadline to February 26, 2021.

The Honorable Deborah L. Boardman
September 8, 2020
Page 6

---

Interrogatory Nos. 14 and 15 merely track the language in paragraphs 58 and 72 of Plaintiff's Complaint. None of the interrogatories are meant to clarify the issues or narrow the scope of the dispute, as Plaintiff's allegations regarding Defendant Ritz are clear and remain unchanged— Defendant Ritz used improper suggestion while interviewing Ms. Powell and others and withheld exculpatory evidence from the prosecutor and Mr. Bryant's trial counsel. Thus, even under the *In re Convergent* framework, Interrogatory Nos. 9, 14, and 15 are premature.

Federal Rule of Civil Procedure 33 provides that a "court may order that [a contention] interrogatory need not be answered until designated discovery is complete, or until a pretrial conference or some other time." For the foregoing reasons, Plaintiff requests that the Court do so here, and order that Plaintiff need not answer Interrogatory Nos. 9, 14, and 15 until 30 days after fact discovery is complete.

Respectfully,

/s/
Nick Brustin (*Pro hac vice*)
Anna Benvenutti Hoffmann (*Pro hac vice*)
Amelia Green (*Pro hac vice*)
Neufeld Scheck & Brustin, LLP
99 Hudson Street, 8th Floor
New York, NY 10013
nick@nsbcivilrights.com
anna@nsbcivilrights.com
amelia@nsbcivilrights.com
T: (212) 965-9081/ F: (212) 965-9084

Joshua R. Treem (Bar No. 00037)
Jean Zachariasiewicz (Bar No. 19734)
Chelsea J. Crawford (Bar No. 19155)
Anisha S. Queen (Bar No. 20766)
Brown, Goldstein & Levy, LLP
120 E. Baltimore Street, Suite 1700
Baltimore, Maryland 21201
jtreem@browngold.com
jmz@browngold.com
ccrawford@browngold.com
aqueen@browngold.com
T: (410) 962-1030/ F: (410) 385-0869

*Attorneys for Plaintiff*