


**AVI T. KAMIONSKI**
*Partner*
akamionski@nklawllp.com
**T:** (312) 612-1928
**F:** (952) 658-3011

September 8, 2020

VIA ELECTRONIC FILING ON CM/ECF

Magistrate Judge Doborah L. Boardman
Edward A. Garmatz Courthouse
101 W. Lombard St., Chambers 3C
Baltimore, MD 21201

> RE: ***Estate of Malcom Bryant v. The Baltimore City Police Department, et al.*, 19-cv-0384**

Dear Magistrate Boardman:

Pursuant to your letter order of September 1, 2020, Defendant Ritz and Verger hereby submit their position on (1) The Questioning Sequence At Tyeisha Powell's Deposition and (2) Plaintiff's Requirement To Answer Defendants Contention Interrogatories[1].

## I.     THE QUESTIONING SEQUENCE AT TYEISHA POWELL'S DEPOSITION

It is widely accepted in federal court practice that the party who first serves a notice of deposition is entitled to examine the witness first. *Lumpkin v. Kononov*, 2013 WL 1343666, at \*1 (N.D. Ind. Apr. 3, 2013)("it is understood that the party who notices a deposition will have priority in asking questions..."). Plaintiff takes no issue with the long-standing custom of "first in time – first in right", and, in fact, embraces it, but claims he noticed the deposition first. Plaintiff is wrong. Here is the relevant timeline:

- **September 17, 2019** – Defendants attempt to schedule an in-person meeting with Tyeisha Powell (Text Messages attached hereto as Ex. 1)
- **September 19, 2019** – Ms. Powell emailed Defendants, "please do not show up at my home…do not send anymore detectives or representatives to my home…if this request is not honored, I will….have my Attorney involved." (Ms. Powell's Email attached hereto as Ex 2)
- **October 15, 2019** – Candes Daniels, counsel for Ms. Powell, emailed Defendants, "I have been retained to represent Ms. Powell.…Please do not contact Ms. Powell from this

---

[1] According to the Court's letter order dated September 1, 2020, the parties were to include the issue of Plaintiff's privilege assertions within their position statements. (Dkt. #97). However, the parties are continuing to confer regarding Plaintiff's privilege log and have agreed to hold off on involving the Court at this time.



point forward. Ms. Powell will be pursuing reimbursement of any legal fees incurred as a result of any depositions noted." (Ms. Daniels' Email attached hereto as Ex. 3)

- **April 24, 2020** – Plaintiff emailed Defendants Plaintiff's First Set of Requests for Production of Documents to Defendants Ritz and Verger and asked "Please let us know if you agree to electronic service for future discovery in your response to this email." (Plaintiff's Email attached hereto as Ex. 4)
- **April 26, 2020** – Defendants responded: "We have no objection and actually prefer electronic service only. We agree to electronic service in this case." (Defendants' Email attached hereto as Ex. 5)
- **May 19, 2020 @ 2:10PM** – Defendants noticed Ms. Powell's deposition and emailed a copy of the email and subpoena served on Ms. Daniels. (Defendants' Email attached hereto as Ex 6 and Deposition Subpoena attached hereto as Ex. 7)
- **May 19, 2020 @ 10:36PM** – Ms. Daniels emailed Defendants in response: "I will likely be away on military orders until mid September 2020. I do not have exact dates because of COVID. Can this be scheduled after September 15, 2020?". (Ms. Daniels' Email attached hereto as Ex. 8)
- **May 20 and 28 2020** – Defendants emailed Ms. Daniels in an attempt to reschedule the deposition. (Defendants' Emails attached hereto as Ex. 9)
- **May 28, 2020** – Plaintiff, via a process server, personally served Ms. Powell with a deposition subpoena at her home. (Plaintiff's Subpoena and Letter attached hereto as Ex. 10)
- **June 8 2020** – Ms. Daniels emailed Defendants asking to reschedule Ms. Powell's Deposition to "late September or October." (Ms. Daniels' Email attached hereto as Ex. 11)
- **June 15, 2020** – Defendants emailed Plaintiff with proposed dates for Ms. Powell's deposition in October. (Defendants' Email attached hereto as Ex. 12)
- **June 23, 2020** – Defendants email Ms. Daniels with the agreed upon date of October 14, 2020. (Defendants' Email attached hereto as Ex. 13) The same day, the parties filed a proposed agreed scheduling order to set this deposition date. (See Proposed Agreed Scheduling Order at Dkt 69).

First, there is no dispute that Defendants served notice of Ms. Powell's deposition first when Defendants emailed the deposition subpoena to all counsel, including Ms. Daniels, counsel for Ms. Powell, on May 19, 2020. (Ex. 6 & 7). Plaintiff did not serve his notice until May 28, 2020. (Ex. 10). Since Defendants gave notice of their intent to take Ms. Powell's deposition first, Defendants have priority in taking the lead at her deposition.

Second, Plaintiff's attempt to define "notice" as personally serving Ms. Powell is silly and, arguably, improper. Ms. Powell explicitly told Defendants "do not show up at my home…do not send anymore detectives or representatives to my home." (Ex. 2). Shortly thereafter, Candes Daniels, counsel for Ms. Powell, emailed Defendants, "I have been retained to represent Ms. Powell.…Please do not contact Ms. Powell from this point forward." (Ex. 3). As per Ms. Powell's and her attorney's direction, Defendants directed all further contact to, her counsel, Ms. Daniels and on May 19, 2020, emailed the deposition subpoena to Ms. Daniels. (Ex. 6 & 7.) Ms. Daniels acknowledged receipt of Defendants notice and subpoena by email the same day. (Ex. 8 "Can this be scheduled after September 15, 2020?"). In response, Defendants reached out to Ms.



Daniels and scheduled a date for Ms. Powell's deposition. (Ex. 9, 11, 13). Ms. Daniels never indicated to Defendants that she was objecting to accepting service by email, and, to the contrary, Ms. Daniels' response (i.e. scheduling) suggests she was perfectly OK with service by email. In fact, if there is any question about Ms. Daniels preferred method of communication, Ms. Daniels was explicit: "I'm trying to say this the nicest way possible, can you please communicate with me via email only?" (Ms. Daniels' Email on June 13, 2020 attached hereto as Ex. 14). See also (Ms. Daniels' Email on June 1, 2020 attached hereto as Ex. 15)("Can you please just email me instead of calling?"). As such, Defendants service of the notice and subpoena via email was valid. *In re MTS Bank*, No. 17-21545-MC, 2018 WL 1718685, at *2 (S.D. Fla. Mar. 16, 2018)(Service of Rule 45 subpoena on deponents' counsel, as opposed to the deponent himself is proper service); *Doe v. Hersemann*, 155 F.R.D. 630 (N.D.Ind.1994) (holding that service of a subpoena via certified mail is sufficient under Rule 45, particularly when Defendant does not deny actual receipt); *Rainey v. Taylor*, No. 18-24802-MC, 2019 WL 1922000, at *3 (S.D. Fla. Apr. 30, 2019)("Rule 45 does not expressly prohibit e-mail service" and finding service by email proper). Furthermore, Plaintiff has no standing to object to the method of service on Ms. Daniels. *Edelson, P.C. v. Bandas Law Firm, P.C.*, No. 2:18-MC-980, 2018 WL 6588436, at *2 (S.D. Tex. Dec. 14, 2018)("A plaintiff cannot challenge a Rule 45 subpoena…to a non-party, the party must have either possession of the materials subpoenaed or a personal right or privilege with respect to the materials subpoenaed").

Accordingly, for all the reasons stated above, since Defendants were first to notice Ms. Powell's deposition, Defendants should be granted priority to ask questions at the deposition.

## II. PLAINTIFF SHOULD ANSWER DEFENDANTS INTERROGATORIES 9, 10, 14 AND 15

Defendants issued Interrogatories 9, 10, 14 & 15 as follows:

- Is it your contention that Detective Ritz was not entitled to rely upon the statements made by Tyeisha Powell during the December 1, 1998 interview or any other statement or identification, which inculpated Malcolm Bryant in the homicide of Toni Bullock? If the answer to this interrogatory is anything other than an unqualified "no", state each and every fact, and identify all documents, upon which you base your contention. (Int. No. 9?)
- Identify all documents (to include Bates numbers) relating to, and all persons who may have personal knowledge of, Plaintiff's allegation in paragraph 28 of the Complaint that Malcolm Bryant was "known" to Detective Ritz. (Int. No. 10).
- Identify the complete factual basis for the contention in paragraph 58 that Detective Ritz never disclosed a December 29 interview with John Doe's father to the prosecutor, Mr. Bryant's defense attorney, or Mr. Bryant. (Int. No. 14).
- Identify the complete factual basis for the contention in paragraph 72 of the Complaint that "Detective Ritz never disclosed the report of this second potential witness named Tyeisha, nor her account of the crime which contradicted Ms. Powell's account to the prosecution, Mr. Bryant's counsel, or Mr. Bryant. None of the 911 call reports was disclosed." (Int. No. 15).



The above interrogatories seek basic information necessary to properly defend against this lawsuit. Moreover, answers to these interrogatories will guide the parties in their decision about which avenues of discovery are necessary.

Plaintiff alleges that Defendant Ritz suggested Malcolm Bryant as the perpetrator to Ms. Powell, which, purportedly, caused Ms. Powell to identify Bryant. (Plaintiff's Complaint at ¶ 32, Dkt 1). To show motive for this claim, Plaintiff says, "prior to the investigation of Ms. Bullock's murder, Malcolm Bryant was known to Detective Ritz. Detective Ritz knew Mr. Bryant from a prior, unrelated investigation." (Id. at ¶ 28). In addition, Plaintiff claims that Defendant Ritz committed a Brady violation by failing to disclose "a December 29 interview with John Doe's father " (Id. at ¶ 58) and a "report [from a] second potential eyewitness named Tyeisha.[2]"

Ms. Powell is the sole eyewitness who identified Mr. Bryant as the person who grabbed her and the murder victim, Toni Bullock. Mr. Bryant's arrest, prosecution and conviction relied entirely on Ms. Powell's identification. Defendant Ritz will testify that he reasonably relied on Ms. Powell's identification as probable cause in arresting and seeking charges against Mr. Bryant. *Young v. Santos*, No. CV GLR-16-1321, 2018 WL 1583557, at *5 (D. Md. Apr. 2, 2018)("[A]n eyewitness' untainted positive identification of a criminal suspect from a photo array constitutes sufficient probable cause to arrest that suspect. In fact, even where an eyewitness later rescinds his identification after the individual is arrested, it is nonetheless reasonable for an officer to have relied on this identification as the basis for probable cause to arrest.") (internal citations omitted).

Plaintiff's allegations seek to undermine the reliability of Ms. Powell's identification for purposes of probable cause. As such, in order to properly defend against these allegations, Defendants must know what evidence Plaintiff possesses to attack the reliability of Ms. Powell's identification, as requested in interrogatory 9.

Similarly, interrogatory 10 is needed in order for defendants to assess the basis of the allegation that Bryant was known to Ritz. As far as defendants can tell, there is not a shred of evidence to support this allegation. If that's true, defendants are entitled to know that now so they may dedicate their limited defense resources to countering other allegations. Plaintiff should not be permitted to throw random, unsupported allegations against the wall just to force defense counsel to run around defending a claim that Plaintiff had no intention of proceeding on.

Finally, interrogatories 14 and 15 ask Plaintiff to identify evidence that Defendant Ritz purportedly withheld *Brady* material from an alleged December 29 interview and a report from a second potential eyewitness named Tyeisha. This is basic information which defendants should be provided so that they know what claims they are facing. Plaintiff has the benefit of general notice pleading under Fed. R. Evid. 8(a) but now is the time for the full scope of the allegations

---

[2] This Tyeisha is allegedly someone distinct from Tyeisha Powell. Plaintiff alleges "at trial, for the first time, Ms. Powell reported that after she ran from the assailant, she met with a "friend" named Tyeisha before returning to the scene of the crime." (Plaintiff's Complaint at ¶ 71, Dkt 1).



to be disclosed and defended against. It would be fundamentally unfair to permit Plaintiff to hold back the basis of the allegations being asserted just to spring them on defendants in the context of a jury instruction or closing argument. The purpose of discovery is to permit such matters to be fully vetted and avoid the old notion of trial by ambush.

Plaintiff objects to answering these interrogatories claiming they are premature. Plaintiff cites to *Taggart v Damon Motor Coach*, 2007 WL 152101, at *8 (N.D.W. Va. Jan. 17, 2007) to support his position that contention interrogatories need not be answered at this stage of the litigation. (Plaintiff's Responses and Objections to Defendant Ritz's First Set of Interrogatories attached hereto as Ex. 16). Plaintiff ignores, however, that the court in *Taggart* noted that contention interrogatories are permitted by the Federal Rules and "are beneficial in that they can help pin down an opponent's legal theories in a case as well as the primary facts supporting them." Id. at *7 (quoting *Jayne H. Lee, Inc. v. Flagstaff Indus. Corp.*, 173 F.R.D. 651, 652 (D. Md. 1997) (internal quotations omitted)). Significantly, *Taggart* cites *In re Convergent Technologies Securities Litigation*, 108 F.R.D. 328 (1985), which provides an extensive "framework for handling contention interrogatories that are served before substantial discovery has been completed[.]" *Id*. at 332. The *In re Convergent* court noted that "a party who wants early answers to contention interrogatories must hand-craft a limited set of questions . . . show that there is good reason to believe that answers to its well-tailored questions will contribute meaningfully to clarifying issues in the case [and/or] narrow the scope of the dispute[.]" Id. at 338. Applying that analysis, the *Taggart* court noted that an interrogatory which asks for a party's legal theories "and the facts that support those theories," should be answered. *Taggart*, 2007 WL 152101, at *8. In *Rusty Jones, Inc. v. Beatrice Co*. the court rejected a similar objection by a plaintiff who claimed a defendant's contention interrogatories were premature. The Court said:

> Rusty Jones maintains that it has not yet gathered enough information through discovery to adequately answer the interrogatories. However, several months before filing the case, Rusty Jones had access to thousands of pages of Beatrice's documents because Beatrice had produced the documents in response to a request by Rusty Jones when Rusty Jones filed for bankruptcy. Moreover, Beatrice has already answered Rusty Jones' interrogatories and document production requests. Also, Rusty Jones certainly investigated the case before filing their complaint in order to have some factual basis upon which to base its allegations, in compliance with Fed.R.Civ.P. 11. Therefore, the court finds Rusty Jones does have sufficient information with which to answer Beatrice's contention interrogatories.
>
> No. 89 C 7381, 1990 WL 139145, at *1–2 (N.D. Ill. Sept. 14, 1990).

Plaintiff's case is akin to *Rusty Jones, Inc*. The facts and evidence to attack the reliability of Ms. Powell's identification should be well known by now, as it serves as the basis for his malicious prosecution claim. Plaintiff has been fighting murder charges since 1998. Plaintiff has amassed so much material that he alone produced over 8000 documents and a 17-page single-spaced privilege log in this case. Plaintiff, no doubt, investigated this matter over many years and should be equipped to answer these basic questions about the facts supporting critical allegations. In fact, without ready answers to these interrogatories, Plaintiff arguably would not



have a good faith basis to even file the instant lawsuit. Accordingly, the Court should order Plaintiff answer interrogatories 9, 10, 14 and 15.

Sincerely,

*/s/ Avi T. Kamionski*
Avi T. Kamionski, Bar No. 20703
Shneur Nathan, Bar No. 20707
Theresa Concepcion, Bar No. 21143
Matthew J. Mc Carter, Bar No. 21032
NATHAN & KAMIONSKI LLP
201 N. Charles St., Suite 1202
Baltimore, MD 21202
P: (312)612-1928
akamionski@nklawllp.com

*Attorneys for Defendants William Ritz and Barry Verger*