BROWN GOLDSTEIN LEVY

September 9, 2020

**BY ECF**
Hon. Deborah L. Boardman
United States Magistrate Judge
United States District Court for the District of Maryland
101 West Lombard Street, Chambers 3C
Baltimore, Maryland 21201

      Re:    *The Estate of Malcolm J. Bryant v. Baltimore City Police Dep't, et al.*,
                No. 1:19-cv-00384-ELH

Dear Judge Boardman:

      Malcolm Bryant was wrongfully convicted and spent more than 17 years incarcerated for a crime he did not commit—the 1998 assault and murder of Toni Bullock. Mr. Bryant was exonerated based on DNA evidence, including fingernail testing from the victim. Plaintiff alleges that Defendant William Ritz, who was the lead Baltimore Police Department ("BPD") detective in this homicide investigation, used improper suggestion to obtain the key evidence against Mr. Bryant—the identification by Tyeisha Powell—and withheld exculpatory evidence undermining that identification, including evidence implicating an alternative suspect.[1] In Request No. 6, Plaintiff has requested that the BPD produce the BPD homicide files and related investigative files for cases in which Ritz is alleged to have engaged in misconduct, including four identified cases from the same time period in which there are specific allegations that Ritz engaged in similar misconduct. *See* Ex. 1, Pl's. Req. Prod. Doc. to BPD No. 6. In Request No. 5, Plaintiff requested that the BPD produce homicide files involving Ritz that were produced or made available for inspection during litigation of a similar § 1983 wrongful conviction lawsuit brought by Sabein Burgess. *See id.*, Pl's. Req. Prod. Doc. to BPD No. 5. Plaintiff propounded similar requests on Ritz. *See* Ex. 2, Pl's. Req. Prod. Doc. to Ritz Nos. 16, 17. Neither BPD nor Ritz produced any responsive documents. Because such evidence regarding Ritz's conduct (and potential misconduct) in other contemporaneous homicide investigations is relevant and discoverable, and any burden is minimal, Defendants should be ordered to produce at least the homicide files for those four cases and any homicide files made available to Burgess's counsel.

**I.    Background on the four similar cases.**

      Plaintiff requests the production of BPD homicide and investigative files from four specific cases: the October 5, 1994, murder of Michelle Dyson; the August 30, 2000, murder of Kevin Dukes; the July 5, 2002, murder of Sherene Moore and attempted murder of Marcus

---

[1] Specifically, Plaintiff's claims against Detective Ritz that have survived a motion to dismiss include failure to disclose exculpatory and impeachment evidence, fabrication of evidence, malicious prosecution under state and federal law, and intentional infliction of emotional distress under state law. *See* ECF No. 42 (Order), ECF No. 1 (Compl.).

Booker; and the April 16, 2002, murder of Elliott Scott. Like this case, all four cases involved allegations that Defendant Ritz fabricated evidence, failed to disclose exculpatory evidence, engaged in a malicious prosecution, and/or engaged in other intentional constitutional violations.

Sabein Burgess was wrongfully convicted and incarcerated for the October 5, 1994, murder of his girlfriend, Michelle Dyson. *See Burgess v. Baltimore Police Dep't*, No. RDB-15-0834, 2016 WL 795975, at *1 (D. Md. Mar. 1, 2016). In 2014, after a hearing on newly discovered evidence, prosecutors voluntarily dismissed all charges against Burgess, and he was released from prison. *See id.* at *1–*3. In his federal civil rights lawsuit, Burgess alleged that BPD officers, including Ritz, failed to disclose notes and evidence regarding an alternate suspect and other exculpatory evidence, and fabricated inculpatory evidence, including through conspiracy with a BPD crime laboratory analyst to fabricate forensic evidence against Burgess. *See id.* at *2–*3. Ritz was the secondary detective on the case and also investigated an individual who had claimed responsibility for the Dyson murder after Burgess was convicted. *See Burgess v. Baltimore Police Dep't*, No. RDB-15-0834, 2017 WL 4947004, at *2 (D. Md. Oct. 1, 2017). Burgess specifically alleged that Ritz falsely reported that this individual's confession was not credible. *See Burgess*, 2016 WL 795975, at *2. Several of Burgess's claims against Ritz survived to discovery. *See id.* at *13; *see also Burgess*, 2017 WL 4947004, at *1. During discovery, on information and belief, although the *Monell* claims were bifurcated, Burgess was able to obtain production and/or inspection of other contemporaneous homicide files, including some involving Ritz.[2] Although the claims against Ritz were dismissed before trial for insufficient evidence of his personal knowledge of the *Brady* violation, a federal jury later found that Ritz's partner had suppressed *Brady* information, causing Burgess's wrongful conviction. Talia Richman, *Jury awards $15 million to Baltimore man exonerated of murder*, BALTIMORE SUN (Nov. 17, 2017), https://www.baltimoresun.com/news/crime/bs-md-burgess-verdict-20171121-story.html.

Ezra Mable pled guilty and was incarcerated for the August 30, 2000, murder of Kevin Dukes. Ten years later, Mable filed a *pro se* Petition for Post-Conviction Relief, which was joined by the Baltimore City State's Attorney's Office, and he was released from prison. *See* Compl. ¶ 1, *Mable v. Mayor and City Council of Baltimore,* No. JKB-13-650 (D. Md. Mar. 1, 2013). Ritz was one of the lead detectives in the Dukes homicide investigation. *See id.* at ¶¶ 71–72. In a federal civil rights lawsuit, Mable alleged, *inter alia*, that Defendant BPD officers coerced or otherwise fabricated the two witness identifications of Mable, and that Ritz in particular did not follow up on lab reports, directed to him, that found blood under the victim's fingernails. *Id.* ¶¶ 92–96, 107–108, 137–140. However, Mable failed to pursue his lawsuit, which was ultimately dismissed. Order, *Mable*, No. JKB-13-650 (D. Md. Jan. 8, 2014).

---

[2] It is Plaintiff's understanding that any production was covered by a protective order, and therefore Plaintiff cannot obtain further detail through independent investigation about which files were produced.

Tony DeWitt was convicted and incarcerated for the July 5, 2002, murder of Sherene Moore and attempted murder of Marcus Booker. *DeWitt v. Ritz, et al.*, No. DKC 18-3202, 2020 WL 510159, at *1 (D. Md. Jan. 31, 2020). DeWitt was released from prison in 2015, after a successful petition for post-conviction release in 2015 based on ineffective assistance of counsel, who "fail[ed] to develop and investigate adequately an eyewitness…who told the police that [DeWitt] was not the shooter." *Id.* (internal citation and quotation marks omitted). DeWitt alleged that BPD officers, including Ritz, "manufactured inculpatory evidence against him by threatening witnesses," and "ignored numerous exculpatory statements that [DeWitt] was not the shooter." *Id.* (internal citation and quotation marks omitted). Defendant BPD officers filed a partial motion to dismiss, but Ritz did not seek dismissal of DeWitt's § 1983 malicious prosecution claim. *Id.* at *2.[3]

Brian Cooper was convicted and incarcerated for the April 16, 2002, murder of Elliott Scott. The Court of Special Appeals of Maryland reversed Cooper's conviction and remanded for a new trial based on its finding that Ritz intentionally violated *Miranda* and its progeny when he "made a conscious decision to withhold *Miranda* warnings until [Cooper] gave a statement implicating himself in the crime." *Cooper v. State*, 163 Md. App. 70, 96 (2005). Indeed, Ritz himself "acknowledged that neither…he [n]or anyone else inform[ed] appellant of his *Miranda* rights." *Id.* at 75.

## II. The homicide files and related investigative files for these four cases are relevant and discoverable.

Given the similar allegations—of failure to disclose, fabrication of evidence, and malicious prosecution—between this case and the Burgess, Mable, DeWitt, and Cooper cases, the homicide files and related investigative files for at least those cases are relevant and discoverable. "Relevance for discovery purposes is viewed liberally." *Hake v. Carroll Cty., Md.*, No. CIV. WDQ-13-1312, 2014 WL 3974173, at *5 (D. Md. Aug. 14, 2014). "Relevance is not, on its own, a high bar." *Virginia Dep't of Corr. v. Jordan*, 921 F.3d 180, 188 (4th Cir. 2019). "Information sought need only 'appear[ ] [to be] reasonably calculated to lead to the discovery of admissible evidence' to pass muster." *CX Reinsurance Co. Ltd. v. City Homes, Inc.*, Civ. No. JKB-17-1476, 2018 WL 5080944, at *2 (D. Md. Oct. 18, 2018) (internal citation omitted). Defendants, as the party resisting the discovery request, bear the burden of showing why the request should be denied. *Hake*, 2014 WL 3974173, at *5.

---

[3] Defendants have now alleged that DeWitt himself fabricated evidence in order to secure his release from prison. Plaintiff does not know any more about those allegations than what has been publicly reported, and without access to underlying files is not able to evaluate whether the allegations of misconduct by DeWitt, Ritz, or both should be credited.

Requested discovery must also be "proportional to the needs of the case" after considering such factors as "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information…and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). In § 1983 cases, these factors generally favor production of evidence related to similar allegations of misconduct by named defendants in other cases: "plaintiffs in federal civil rights actions are presumptively entitled to documents on prior complaints and police history" because "[t]he strong public interest in § 1983 actions generally weighs heavily in favor of a full airing of the relevant evidence." *Martin v. Conner*, 287 F.R.D. 348, 350 (D. Md. 2012) (internal citations omitted); *see also Lamarr v. Jackson*, No. 3:14-CV-32, 2015 WL 2401390, at *1 (N.D. W.Va. May 20, 2015) (collecting cases); *Scott v. Clarke*, No. 3:12-CV-00036, 2013 WL 6158458, at *5 n.4 (W.D. Va. Nov. 25, 2013) (same).

Here, the requested files are "reasonably calculated to lead to the discovery of admissible evidence." *CX Reinsurance Co. Ltd.*, 2018 WL 5080944, at *2. Federal Rule of Evidence 404(b) "permits introduction of prior acts to show intent, lack of mistake, plan, knowledge, etc." *Kopf v. Skyrm*, 993 F.2d 374, 380 (4th Cir. 1993). The Fourth Circuit "has not read Rule 404(b) grudgingly," rather defining it "as an 'inclusionary rule,' which permits the introduction of all relevant acts except those that prove *only* character." *Id.* Furthermore, Rule 404(b) "covers evidence of both prior and subsequent acts." *United States v. Mohr*, 318 F.3d 613, 617 (4th Cir. 2003); *see also United States v. Hadaway*, 681 F.2d 214, 217 (4th Cir.1982) ("[S]ubsequent conduct may be highly probative of prior intent.").

Given the specific allegations of similar misconduct in each of the four identified cases, there is at least a reasonable possibility discovery of these case files will lead to evidence admissible under Rule 404(b). For example, as noted above, in the Cooper case, Defendant Ritz admitted to violating Cooper's *Miranda* rights. Not only is this evidence of an intentional constitutional violation during an interrogation in a homicide case during roughly the same time period as the investigation of Malcolm Bryant, but it also may provide a relevant contrast to Ritz's cursory interrogation of the alternate suspect in the Toni Bullock investigation, Renaldo Ritch, whom Ritz interrogated for only seven minutes. Moreover, courts, including this Court, have permitted plaintiffs in police misconduct cases to obtain discovery concerning other similar allegations of misconduct, even where unsustained, as long as the other complaints are "relevant to the [plaintiff's] cause of action." *See Martin*, 287 F.R.D. at 352 (collecting cases and differentiating between evidence that is discoverable and admissible in court). Thus, Plaintiff need not prove that Ritz committed the misconduct alleged in the four identified cases in order to obtain discovery on them.

Such files, however, would not have to provide evidence of independent constitutional violations to be relevant. For example, evidence regarding Ritz's practices in other contemporaneous homicide investigations could provide admissible evidence relevant to proving

Ritz's intent in this case. *See, e.g., Restivo v. Hessemann*, 846 F.3d 547, 580 (2d Cir. 2017) (holding evidence of a defendant's persistent deviations from "applicable professional standards" can "support an inference of intentional or reckless conduct that violated a plaintiff's constitutional rights"); *see also Jimenez v. City of Chicago*, 732 F.3d 710, 721–22 (7th Cir. 2013) (same). Such evidence could also impeach Ritz's testimony in this case, and in that way be admissible.

      By specifically identifying the four case files sought, Plaintiff has minimized any burden imposed on Defendants. Presumably, Defendants can also easily determine which homicide files were made available to Burgess during his litigation so that a similar production could be made available here. Although Plaintiff's initial requests were framed more broadly, Defendants could limit any initial production to the full police investigative file in each case—which should be stored together in one place—further limiting any burden of production. The full investigative file is necessary to evaluate, for example, whether there are any *Brady* violations or related failures to report information to the prosecution. Should a review of those files reveal relevant evidence, Plaintiff could then follow up for any additional relevant files. Accordingly, this Court should order Defendants to produce: (1) the homicide files for the four identified cases in Plaintiff's Request No. 6 to the BPD (and Request No. 17 to Ritz); and (2) any homicide files involving Ritz that were made available to Burgess's counsel in response to Plaintiff's Request No. 5 to the BPD (and Request No. 16 to Ritz).

      Respectfully,

/s/
Nick Brustin (*Pro hac vice*)
Anna Benvenutti Hoffmann (*Pro hac vice*)
Amelia Green (*Pro hac vice*)
Neufeld Scheck & Brustin, LLP
99 Hudson Street, 8th Floor
New York, NY 10013
nick@nsbcivilrights.com
anna@nsbcivilrights.com
amelia@nsbcivilrights.com
T: (212) 965-9081/ F: (212) 965-9084

                                                Joshua R. Treem (Bar No. 00037)
                                                Jean Zachariasiewicz (Bar No. 19734)
                                                Chelsea J. Crawford (Bar No. 19155)
                                                Anisha S. Queen (Bar No. 20766)
                                                Brown, Goldstein & Levy, LLP
                                                120 E. Baltimore Street, Suite 1700
                                                Baltimore, Maryland 21201
                                                jtreem@browngold.com
                                                jmz@browngold.com
                                                ccrawford@browngold.com
                                                aqueen@browngold.com
                                                T: (410) 962-1030/ F: (410) 385-0869

                                                *Attorneys for Plaintiff*