

# Neufeld Scheck & Brustin, LLP

Tel: [212] 965-9081  
Fax: [212] 965-9084

99 Hudson Street, 8th Floor  
New York, New York 10013  
nsbcivilrights.com

October 8, 2020

**BY ECF**
Hon. Deborah L. Boardman
United States District Court
101 West Lombard Street, 3C
Baltimore, Maryland 21201

        Re:    *The Estate of Malcolm J. Bryant v. Baltimore City Police Dep't, et al.*,
              No. 1:19-cv-00384-ELH

Dear Judge Boardman:

      Plaintiff writes to address the Court's question from today's discovery conference as to whether limitations should be placed on counsel's mode of examination of Tyeisha Powell at her deposition scheduled for October 14, 2020. There should not be.

      This § 1983 suit seeks to hold BPD officers responsible for sending Malcolm Bryant, an innocent man, to prison for nearly 17 years. In 2016, after post-conviction DNA testing exonerated Mr. Bryant and the Baltimore City State's Attorney's Office (SAO) conducted an independent reinvestigation of the case, the SAO found Mr. Bryant was actually innocent and agreed to vacatur of his wrongful conviction. Tyeisha Powell is not only the key eyewitness to the crime in this case, she was also the only witness to incriminate Mr. Bryant at trial. Nevertheless, when interviewed on the day of the crime she was barely able to give a description of the perpetrator—a man who, given Ms. Powell's description of the crime, Ms. Powell was barely able to see. At her deposition, Plaintiff's counsel has no interest in causing Ms. Powell any distress. But through respectful questions, Plaintiff's counsel must be permitted to explore how, over the course of a police investigation, it came to be that Ms. Powell went from not being able to describe the perpetrator's face with any specificity to positively identifying an innocent man, Mr. Bryant. In doing so, Plaintiff intends to ask Ms. Powell about topics such as her memory of the crime, her pretrial interactions with third-party witnesses, including the other victim's family members, and her interactions with police officers and prosecutors, including her many interactions with Defendant Ritz. And Ms. Powell may have other useful information about the crime and police investigation that, given her unwillingness to communicate with counsel outside of a deposition, may only be elicited during the examination. Moreover, through respectful questions, we must be permitted to not only elicit her account of key elements regarding the crime and investigation, but also probe the reliability of that testimony, including by showing Ms. Powell past statements and testimony she gave during the police investigation and criminal proceedings.

      It was unclear from the back and forth today precisely what types of limitations the Court was contemplating imposing on Plaintiff's examination at the deposition. But we respectfully

suggest no limitations of the kind Defendants suggested would be appropriate. It is telling that defense counsel—experienced litigators—were unable to provide any example of another court doing what they have requested this Court do: impose pre-deposition limitations on the use of leading questions or cross-examination of a crucial third-party witness. In our own collective decades of practice in federal courts around the country, we have neither had such limitations imposed in our own cases nor located any similar examples in our own legal research. What Defendants are requesting appears truly unprecedented. We submit that both the truth-seeking goal of the discovery process and the fair and efficient administration of justice are best served by not imposing any limitations on the form of the question Plaintiff's counsel may ask at Ms. Powell's deposition.

### I. Leading questions are appropriate at Ms. Powell's deposition.

Under Federal Rule of Evidence 611, leading questions are permitted "as necessary to develop the witness's testimony," and ordinarily should be permitted "on cross-examination" and "when a witness calls a hostile witness, an adverse party, or a witness identified with an adverse party." The advisory committee notes expand that leading questioning is appropriate for "[t]he witness who is hostile, unwilling, or biased…[or] the witness whose recollection is exhausted." Fed. R. Evid. 611 advisory committee's notes to 1972 proposed rules; *see also* Fed. R. Evid. 611 advisory committee's notes to 1974 enactment (clarifying this rule intends "that leading questions could be asked of a hostile witness or a witness who was unwilling or biased and even though that witness was not associated with an adverse party").

Although we do not yet know what Ms. Powell's demeanor will be during the deposition, we already have strong indications she qualifies as a "hostile witness or a witness who was unwilling or biased." Ms. Powell has expressed frustrations with respect to Mr. Bryant's exoneration and has indicated she does not wish to be contacted in any manner in reference to this case. Despite repeated attempts, Ms. Powell has refused to have any communication with representatives of Plaintiff in advance of her deposition. As Wright and Miller explains, this alone is a significant indication of hostility which makes leading questions appropriate: "The witness's refusal to meet with the direct examiner before trial to prepare for his testimony may be particularly important since the refusal suggests hostility and the inability to prepare reduces the likely impact of suggestive questions at trial." 28 Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 6168(c), Westlaw (database updated April 2020).

The most analogous case Plaintiff could find, *McCaffrey v. City of New York*, endorsed the use of leading questions as proper in similar circumstances. No. 11 CIV. 1636 RJS, 2013 WL 494025, at *7–8 (S.D.N.Y. Feb. 7, 2013). There, as here, the plaintiff in a civil rights case deposed a third-party witness who was obviously reluctant to attend the deposition, and defense

2

counsel objected that deposition questions were impermissibly leading.[1] First, the court held the challenged questions—which merely presented the witness with her own prior unsworn statements contradicting her deposition testimony and asked follow-up questions about them—were *not* leading. But the court continued that, even if the questions *had* been leading, that would have been proper, as the court had "little difficulty determining from the deposition transcript that [she] was a hostile witness." *Id.* at 8. So too, here, Plaintiff's counsel should not be limited in asking leading questions of this witness who is already known to be "hostile or unwilling."

## II. Plaintiff is permitted to impeach Ms. Powell at her deposition.

In addition, the Federal Rules of Evidence are clear that "[a]ny party, including the party that called the witness, may attack the witness's credibility." Fed. R. Evid. 607; *see also United States v. Sesere*, 413 F. App'x 653, 659 (4th Cir. 2011) (noting the Fourth Circuit has specifically recognized that "[a] party may impeach its own witness [under Rule] 607") (quoting *United States v. Henderson,* 717 F.2d 135, 137 (4th Cir.1983)).

And such permissible impeachment is broad; it can encompass, for example "demonstration of bias…or motive to testify in a particular fashion;" "demonstration of incapacity to perceive, remember or relate;" "impeachment by contradiction;" and "impeachment by prior inconsistent statement." *See Behler v. Hanlon*, 199 F.R.D. 553, 556 (D. Md. 2001) (discussing various forms of impeachment at length). Furthermore, "a witness may be impeached by contradiction in several ways: 'close questioning' to elicit concessions of errors in testimony during direct; questioning a witness about the substance or implications of evidence already produced during the case to suggest contradictions; confronting the witness with his or her own contradictory prior statements; and calling another witness or introducing other extrinsic contradicting evidence." *Behler*, 199 F.R.D. at 558.

Information "need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1). Given Ms. Powell's unwillingness to talk to counsel outside a deposition, our only opportunity to discover evidence that might be admissible to impeach her testimony at trial is at the deposition. We will not know whether questioning will lead to permissible impeachment evidence until we have asked the question. Or her deposition testimony could suggest that other evidence exists elsewhere, which further discovery could produce in admissible form.

We respectfully suggest the limitations contemplated during today's hearing—essentially, requiring a narrative answer from the witness first, and limiting or prohibiting the use of leading questions—are both inappropriate under the federal rules and counter-productive. First, Plaintiff's counsel is keenly aware of the limited time available for this deposition, as well as the inability to gather information or testimony from this witness in any other way, given her

---

[1]"For instance, when asked by Plaintiff's counsel if she wanted to be at the deposition, [the witness] responded: 'I've already been through this and I'm done, I'm tired, I have a life, I have things to do, this wasn't my fault, I'm not benefitting from this, it's not ... giving me anything .... I feel like it's a waste of time; I could be doing something else.'" *McCaffrey*, No. 11 CIV. 1636 RJS, 2013 WL 494025, at *8.

3

unwillingness to communicate with us outside of a deposition. To limit the intrusion on Ms. Powell's time, we want to focus the examination on key relevant areas, not elicit a narrative response that may cover many topics not significant to our dispute. Rather, we would intend to direct Ms. Powell to specific areas, either where she has already provided testimony in the past (and probe any inconsistencies or implausibilities in her answers) or where she has not been asked questions under oath. Second, asking for a purely narrative response poses special problems here, where the events in question happened so many years ago such that her recollection will almost certainly have to be refreshed. And Ms. Powell, a lay witness, is unlikely to know what facts may be of particular significance to the legal claims, so an undirected narrative may well omit key information. Moreover, limitations on impeachment are particularly unfair here, where Defendants have made clear they intend to use Ms. Powell's testimony to argue Mr. Bryant is actually guilty, despite his exoneration.

In contrast, the dangers sought to be avoided in the limitation on leading questions—that the witness may simply adopt any suggestion provided by questioning counsel—is exceptionally unlikely here, where the witness not only is not friendly to Plaintiff's counsel but will be represented by her own lawyer. The few cases we could find disapproving of the use of leading questions in a deposition involved circumstances—like that in the one case Defendants cited in their motion—in which counsel was asking leading questions at a deposition of a witness clearly identified with and likely to take the lead from the questioning lawyer, most typically the lawyer's own client. That is a far cry from the situation here.

Finally, the alternatives suggested at today's hearing pose practical problems. The general rule is any objections as to the form of the question at a deposition are noted, but the examination proceeds. Fed. R. Civ. P. 30(c)(2). And counsel are prohibited from making speaking objections or instructing witnesses not to answer questions. D. Md. Discovery Guidelines 6(b), 6(d). As a result, questioning at depositions is necessarily more flexible than the presentation of evidence at trial. Indeed, Wright and Miller advises that although Rule 30(c)(1) "directs that the examination and cross–examination proceed as permitted at trial, so that leading questions are allowed with adverse witnesses…[t]he language 'as permitted at trial' does not, however, limit the manner in which a party may depose any witness." 8 Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 2113, Westlaw (database updated April 2020). In other words, counsel are necessarily provided more leeway to question during depositions, where there is no court available to rule contemporaneously on objections and no jury to be prejudiced by the admission of improper evidence. Nor is there any prejudice to an improperly asked question, because the Court can always rule later that the elicited testimony is inadmissible.

On the other hand, the prejudice to Plaintiff if counsel cannot fully test Ms. Powell's testimony at her deposition—the only opportunity we may ever have—would be extreme. "The importance of credibility of witnesses to the trial of cases cannot be overstated." *Behler*, 199 F.R.D. at 556. "Depositions provide an important crucible for determining whether or not the information has been both fully and accurately revealed through employment of the art of cross-

examination." *UAI Tech., Inc. v. Valutech, Inc.*, 122 F.R.D. 188, 190 (M.D.N.C. 1988). But the deposition cannot serve that truth-seeking function if Plaintiff's counsel is not permitted to impeach Ms. Powell at her deposition, including through the use of leading questions.

Respectfully,

/s/

Nick Brustin (Pro hac vice)
Anna Benvenutti Hoffmann (Pro hac vice)
Amelia Green (Pro hac vice)
Yasmin Dagne (Pro hac vice)
Neufeld Scheck & Brustin, LLP
99 Hudson Street, 8th Floor
New York, NY 10013
nick@nsbcivilrights.com
anna@nsbcivilrights.com
amelia@nsbcivilrights.com
yasmin@nsbcivilrights.com
T: (212) 965-9081/ F: (212) 965-9084

Joshua R. Treem (Bar No. 00037)
Jean Zachariasiewicz (Bar No. 19734)
Chelsea J. Crawford (Bar No. 19155)
Anisha Queen (Bar No. 20766)
Brown, Goldstein & Levy, LLP
120 E. Baltimore Street, Suite 1700
Baltimore, Maryland 21201
jtreem@browngold.com
jmz@browngold.com
ccrawford@browngold.com
aqueen@browngold.com
T: (410) 962-1030/ F: (410) 385-0869

*Attorneys for Plaintiff*