**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

|  |  |  |
|---|---|---|
| | * | |
| **THE ESTATE OF MALCOLM J.<br>    BRYANT,** | * | |
| **Plaintiff,** | * | |
| **v.** | * | **Case No.: ELH-19-384** |
| **BALTIMORE POLICE<br>    DEPARTMENT,** *et al.,* | * | |
| | * | |
| **Defendants.** | | |
| | * | |

\*       \*       \*       \*       \*       \*       \*       \*       \*       \*       \*       \*       \*

**MEMORANDUM OPINION AND ORDER**

The parties to this civil rights lawsuit jointly moved to compel the Baltimore City State's

Attorney's Office ("SAO"), a nonparty, to produce documents responsive to a Rule 45 subpoena.

ECF 106.[1] The SAO withheld the documents on work product grounds. The SAO filed a response

to the motion to compel, ECF 110, and submitted a copy of its privilege log to chambers. Because

the privilege log was not filed on the docket and should be part of the record, it is attached to this

memorandum opinion and order. The parties filed a joint reply. ECF 111. The Court held a Zoom

hearing on October 8, 2020 and directed the SAO to submit the withheld documents for *in camera*

review. The Court held a second Zoom hearing on October 14, 2020. Counsel for the parties and

the SAO participated in both Zoom hearings.

---

[1] The parties filed a letter with the Court explaining the dispute with the SAO over the subpoena
and seeking the Court's assistance. ECF 106. I have construed the joint letter as a motion to
compel.

The privilege log includes forty-two entries.[2]  In response to the parties' motion, the SAO produced three documents it initially withheld.  After the first Zoom hearing, the SAO agreed to produce additional documents.  It offered to do so out of fairness and in the interest of justice, but on the condition that the production would not be considered a waiver of the privilege as to the other documents.  The parties agreed to this offer.  As a result, several documents are no longer at issue.  They are documents 2, 3, 14–22, 24, 26–28, and 42.  Additionally, the parties reached an agreement on several other documents that were redacted or withheld because they contained personal identifying information.  They are documents 8–12 and 29–41.  Those documents also are no longer at issue.  For reasons stated on the record during the second Zoom hearing, the Court ordered the production of documents 1, 6 (with criminal history redacted), and 25 (with the second page redacted).

The Court took under advisement the question of privilege as to documents 4, 5, 7, and 23 and the second page of document 25.  The Court also took under advisement the argument advanced by the individual defendants, Detective William Ritz and Analyst Barry Verger, that the SAO waived the privilege entirely when it disclosed its file to the Quattrone Center for the Fair Administration of Justice ("Quattrone Center") as part of a collaborative post-exoneration examination of Mr. Bryant's wrongful conviction.  The Court has reviewed the parties' filings, heard their arguments and the arguments of the SAO, and reviewed the documents submitted for *in camera* review.  For the following reasons, the Court finds the SAO did not waive the work product privilege by providing its file to the Quattrone Center or allowing two of its prosecutors to be interviewed by the Quattrone Center.  The Court further finds the work product privilege

---

[2] The SAO did not include a column in the log that identifies the documents by number.  For the sake of clarity, the Court has inserted a column with numbers and will refer to the documents by the corresponding number on the log.

protects from disclosure documents 7, 23, and page two of document 25.  The parties' motion to compel is denied as to those documents.  The Court finds the work product privilege does not protect from disclosure documents 4 and 5.  The parties' motion to compel is granted as to those documents.

## I.  Discovery of Work Product

Rule 26(b) provides that parties "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense . . . ." Fed. R. Civ. P. 26(b)(1).  Privileged matters include those protected by the work product doctrine, which is "'a qualified privilege,' to be held by lawyer and client alike, 'for certain materials prepared by an attorney "acting for his client in anticipation of litigation."'"  *In re Search Warrant Issued June 13, 2019*, 942 F.3d 159, 173–74 (4th Cir. 2019), *as amended* (Oct. 31, 2019) (quoting *United States v. Nobles*, 422 U.S. 225, 237–38 (1975) (quoting *Hickman v. Taylor*, 329 U.S. 495, 508 (1947))).  A document is prepared "in anticipation of litigation" if it is "prepared *because* of the prospect of litigation when the preparer faces an actual claim or a potential claim following an actual event or series of events that reasonably could result in litigation."  *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Murray Sheet Metal Co.*, 967 F.2d 980, 984 (4th Cir. 1992) (emphasis in original).  Pursuant to the work product doctrine, which has been incorporated into the Federal Rules of Civil Procedure at Rule 26(b)(3), "an attorney is not required to divulge, by discovery or otherwise, facts developed by his efforts in preparation of the case or opinions he has formed about any phase of the litigation." *Chaudhry v. Gallerizzo*, 174 F.3d 394, 403 (4th Cir. 1999) (quoting *In re Doe*, 662 F.2d 1073, 1077 (4th Cir. 1981)); *see* Fed. R. Civ. P. 26(b)(3).  The burden is on the party seeking the doctrine's protection to demonstrate that it applies.  *Solis v. Food Employers Labor Relations Ass'n*, 644 F.3d 221, 232 (4th Cir. 2011).

The law distinguishes between fact work product and opinion work product. Fact work product "is 'a transaction of the factual events involved,'" whereas opinion work product "'represents the actual thoughts and impressions of the attorney.'" *In re Search Warrant Issued June 13, 2019*, 942 F.3d at 174 (quoting *In re Grand Jury Subpoena*, 870 F.3d 312, 316 (4th Cir. 2017) (internal quotation marks omitted)).

Work product may be discovered under certain circumstances. The production of fact work product may be compelled "in limited circumstances, where a party shows 'both a substantial need and an inability to secure the substantial equivalent of the materials by alternate means without undue hardship.'" *Id.* (quoting *In re Grand Jury Subpoena*, 870 F.3d at 316); *see* Fed. R. Civ. P. 26(b)(3). Opinion work product is afforded far more protection than fact work product. Even establishing a substantial need for the protected information does not allow access to opinion work product. The "Fourth Circuit has made clear that such production [upon a showing of substantial need] should not include opinion work product." *Owens v. Mayor & City Council of Baltimore*, No. 11-3295-GLR, 2015 WL 6082131, at \*2 (D. Md. Oct. 14, 2015) (citing *In re Allen,* 106 F.3d 582, 607 (4th Cir. 1997)). Indeed, "[o]pinion work product . . . 'enjoys a nearly absolute immunity' and can be discovered by adverse parties 'only in very rare and extraordinary circumstances.'" *In re Search Warrant Issued June 13, 2019*, 942 F.3d at 174 (quoting *In re Grand Jury Subpoena*, 870 F.3d at 316).

## II.     Waiver of Work Product

Before the Court considers whether the privilege applies to documents 4, 5, 7, and 23 and the second page of document 25, the Court will address the individual defendants' argument that the SAO has waived the work product privilege for all of the documents in the Bryant prosecution file. In support of this sweeping argument, they point to the fact that the SAO collaborated with

the Quattrone Center after Mr. Bryant was released from prison.  As part of the collaboration, the

SAO disclosed all or most of its file to the Quattrone Center for a substantive post-exoneration

review of the case.  By disclosing the prosecutorial file to the Quattrone Center, the individual

defendants argue, the SAO waived its right to assert work product protection for any of the

documents disclosed and any other documents in the file that might not have been disclosed but

relate to the subject matter.  In support of their waiver argument, the individual defendants argue

that the results of the collaboration between the Quattrone Center and the SAO have been

published in a public document, a November 2018 Report of the Baltimore Event Review Team

on State of Maryland v. Malcolm J. Bryant.[3]  They also have submitted transcripts of Quattrone

Center interviews with two SAO prosecutors conducted as part of the collaboration between the

two organizations.  Defs.' Ltr. 3; ECF 111-1, 111-2.  They argue that the SAO waived work

product protection through these "extensive interviews," in which "ASA Michael Leedy discussed

credibility of the DNA, conversations with other attorneys, and the SAO policies" and "Lauren

Lipscomb, chief of the Conviction Integrity Unit, . . . cover[ed] her three conversations with

[eyewitness] Ms. Powell, opinions on the credibility of Powell's statements, and interviews with

the victim's family."  Defs.' Ltr. 3.

    "To find waiver, a court must find that there has been 'disclosure of a communication or

information covered by the attorney-client privilege or work-product protection.'"  *In re Fluor*

*Intercontinental, Inc.*, 803 F. App'x 697, 701 (4th Cir. 2020) (quoting Fed. R. Evid. 502); *see Sky*

*Angel U.S., LLC v. Discovery Commc'ns, LLC*, 885 F.3d 271, 276 (4th Cir. 2018) (same).  "Any

voluntary disclosure of privileged or protected information typically waives both attorney-client

privilege and work-product protection."  *In re Grand Jury 16-3817 (16-4)*, 740 F. App'x 243, 246

---

[3] *See* https://www.law.upenn.edu/live/files/8862-malcolm-bryant-exoneration

(4th Cir. 2018) (citing *In re Martin Marietta Corp.*, 856 F.2d 619, 622-23 (4th Cir. 1988)).  To waive work product protection, the disclosure of "the contents of otherwise protected work product [must be] to someone with interests adverse to his or those of the client, knowingly increasing the possibility that an opponent will obtain and use the material."  *Owens*, 2015 WL 6082131, at *2 (quoting *Doe v. United States*, 662 F.2d 1073, 1081 (4th Cir. 1981)).  Typically, "[d]isclosure to a person with an interest common to that of the attorney or the client . . . is not inconsistent with an intent to invoke the work product doctrine's protection and would not amount to such a waiver." *In re Smith & Nephew Birmingham Hip Resurfacing Hip Implant Prod. Liab. Litig.*, No. 17-MD-2775, 2019 WL 2330863, at *4 (D. Md. May 31, 2019) (quoting *In re Doe*, 662 F.2d at 1081).

In addition, "parties may contract to limit the effect of such a disclosure on the disclosing party's right to assert privilege in future proceedings," and "[a] confidentiality agreement between [a] disclosing party and [a] recipient may prevent waiver of work-product protection." *In re Grand Jury 16-3817 (16-4)*, 740 F. App'x at 246 (citing Fed. R. Evid. 502(e); *United States v. Deloitte LLP*, 610 F.3d 129, 141 (D.C. Cir. 2010)).  To determine whether a confidentiality agreement prevented waiver or limited its effects, the Court "appl[ies] standard principles of contract interpretation."  *Id.* (citing *United States v. Gillion*, 704 F.3d 284, 292 (4th Cir. 2012)).  The Court "look[s] at the agreement's language to determine the parties' intent" and "read[s] the contract 'to give effect to all its provisions and to render them consistent with each other.'"  *Id.* (quoting *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 63 (1995)).  Then, if "the words of a contract in writing are clear and unambiguous," the Court ascertains "its meaning . . . in accordance with its plainly expressed intent." *Id.* (quoting *M & G Polymers USA, LLC v. Tackett*, — U.S. — , 135 S. Ct. 926, 933 (2015)).

The disclosure of fact work product results in a "waiver [that] is broad and pertains to all information related to the same subject matter." *Owens*, 2015 WL 6082131, at *2 (quoting *In re Martin Marietta Corp.*, 856 F.2d at 623). In contrast, when the disclosure of opinion work product results in waiver, "the waiver is 'limited' and pertains to only the information actually disclosed." *Id.* (quoting *In re Martin Marietta Corp.*, 856 F.2d at 623).

Here, the SAO did not waive the work product privilege by producing confidential documents from the Bryant prosecution file to the Quattrone Center. The SAO and Quattrone Center were not adversaries. On the contrary, they were collaborators working together to learn from the mistakes made in the investigation and prosecution of Malcolm Bryant. They were united in their effort to prevent wrongful convictions from happening in the future. Their relationship "is not inconsistent with an intent to invoke the work product doctrine's protection." *In re Smith & Nephew*, 2019 WL 2330863, at *4 (quoting *In re Doe*, 662 F.2d at 1081).

The terms of their collaborative relationship were memorialized in a mutual non-disclosure agreement.[4] The agreement clearly and unambiguously shows that the SAO intended to retain its work product privilege. *See In re Grand Jury 16-3817 (16-4)*, 740 F. App'x at 249 (finding, under plain language of a non-disclosure agreement, the party with privileged information that was

---

[4] Because the agreement was not filed on the docket and should be part of the record, it is attached to this memorandum opinion and order.

disclosed to the other party retained its right to assert privilege).[5]   Pursuant to the non-disclosure

agreement, the SAO agreed to provide confidential information, including attorney work product,

to the Quattrone Center so that it could "conduct a Just Culture Event Review" of the case and

"provide insight to the parties, and ultimately the citizens of Maryland, regarding the improvement

of the criminal justice system and the accuracy of the adjudication of criminal cases."  Non-Disc.

Agr. 1.  To protect confidentiality, the Quattrone Center agreed not to use confidential information

shared by the SAO "for any purpose except to evaluate and engage in discussions concerning the

Just Culture Event Review" and not to disclose such information except to Quattrone Center

employees "who [were] required to have the information in order to evaluate or engage in

discussions concerning the contemplated business relationship."  *Id.* ¶ 2.  The Quattrone Center

also agreed to "take reasonable measures to protect the secrecy of and avoid disclosure and

unauthorized use of the [SAO's] Confidential Information," and "to ensure that its employees

who have access to Confidential Information . . . understand their obligations under this Mutual

---

[5] The Court recognizes that *In re Grand Jury 16-3817 (16-4)*, 740 F. App'x 243, is not binding Fourth Circuit precedent and is not exactly on point.  In that case, the parties who that were disputing the disclosure of privileged information were the same parties that previously had entered into an agreement regarding the disclosure of privileged information.  The issue before the Court was whether the agreement between the government and a corporation "preserved [the corporation's] attorney-client privilege and work-product protection for information that the General Counsel of [a subsidiary of the corporation] disclosed to the Government."  *Id.* at 244.  Here, the non-disclosure agreement is not between the parties and the SAO; it is between the SAO and the Quattrone Center, which is not a party to this case or involved in this dispute.  However, the principles of contract interpretation discussed in *In re Grand Jury 16-3817 (16-4)* in the context of a waiver argument are instructive here as the Court attempts to discern whether the SAO intended to waive the work product privilege by disclosing confidential information to the Quattrone Center.

Nondisclosure Agreement" before the information is disclosed to them. *Id.* ¶ 3.[6] Additionally, the Quattrone Center agreed that the drafts of any report generated would "be properly attributed to confer any and all permissible confidential protections under Maryland or federal law." *Id.* ¶ 4.   It also agreed that any drafts and the final report would be submitted to the SAO before publication so that the SAO could "recommend changes" and notify the Quattrone Center if "the report disclose[d] Confidential Information owned by [the SAO] which the [SAO] wishe[d] to withhold from the report," in which case the Quattrone Center would remove the information from the report. *Id.*  Given the language in the non-disclosure agreement and the alignment of interests between the SAO and the Quattrone Center, it is clear that the SAO did not intend to waive the work product privilege when it disclosed its file and allowed its prosecutors to speak with the Quattrone Center.

In response to a Rule 45 subpoena, the Quattrone Center produced documents it received from the SAO to the parties in this case.[7]  This disclosure does not change the waiver analysis here.  The SAO did not know about or authorize this disclosure.  By entering into the non-disclosure agreement, the SAO attempted to prevent an unauthorized disclosure.  Therefore, the Quattrone Center's production to the parties did not waive the SAO's work product protection.

---

[6] The Quattrone Center's interviews with ASA Lipscomb and ASA Leedy were conducted as part of the post-exoneration case review.  These interviews, which included discussion of the prosecutors' opinions on the case and witness credibility, were conducted pursuant to the non-disclosure agreement.  The agreement's definition of "Confidential Information" includes oral disclosures.

[7] Document 13 is one of the documents produced by the Quattrone Center and, therefore, is no longer at issue.

### III.    The SAO Documents

The Court has reviewed the five remaining documents at issue.  The SAO has properly asserted the work product privilege as to documents 7, 23, and 25.  It has not met its burden of establishing work product privilege as to documents 4 and 5.

Document 7, referred to as "Record Synopsis of ASA Lipscomb – Court preparation for NP 5/11/16," is a two-page May 10, 2016 memorandum to file from ASA Lipscomb.  It contains a brief, general synopsis of the case and reinvestigation.  It appears to be prepared in anticipation of her presentation at a court hearing the next day.  This memo is attorney opinion work product. The parties have not demonstrated extraordinary circumstances requiring its production.  Indeed, they only argue that they have a substantial need for the documents.  *See* Jt. Reply 2.  This standard applies only to fact work product, not opinion work product, which requires extraordinary circumstances for production.  *See In re Search Warrant Issued June 13, 2019*, 942 F.3d at 174; *In re Allen,* 106 F.3d at 607; *Owens*, 2015 WL 6082131, at \*2.  The motion to compel the production of document 7 is denied.

Document 23, referred to as "Notes and analysis, fact outline – post conviction ASA 5/11/09," is a six-page outline prepared by a prosecutor handling a post-conviction claim by Malcolm Bryant.  It contains the prosecutor's summary, impressions, and legal analysis of the trial and evidence.  This entire document is opinion work product.  The parties have not established extraordinary circumstances to warrant its production.  The motion to compel the production of document 23 is denied.

Document 25, referred to as "Memo to file – notes and analysis of 1st testing order – post conviction ASA," has been produced with the exception of the second page.  The second page contains the prosecutor's thoughts and recommendations on DNA testing.  This is purely opinion

work product.  The parties have not shown extraordinary circumstances to warrant its production.  The motion to compel the production of the second page of document 25 is denied.

The SAO has not met its burden of establishing work product protection for documents 4 and 5.  The privilege log describes these documents as "Notes by ASA Lipscomb analyzing 8-201 2/9/18" and "Notes by ASA Lipscomb analyzing 8-301 2/9/18."  The SAO informed the Court that both documents are draft letters to outside counsel from the State's Attorney, prepared by ASA Lipscomb.  Document 4 appears to be a February 9, 2018 draft letter to Malcolm Bryant c/o of Joshua Treem regarding Md. Code Ann., Crim. Proc. § 8-201.  Document 5 appears to be an October 12, 2017 letter to Lamar Johnson c/o Parisa Dehghani-Tafti, Esquire, Legal Director of the Mid-Atlantic Innocence Project regarding Md. Code Ann., Crim. Proc. § 8-301.  It is not clear whether the letters ever were sent to Mr. Treem or Ms. Dehghani-Tafti.  Upon review of the draft letters, the Court does not find that they contain legal analysis, as asserted by the SAO, although they do contain legal conclusions and some procedural background on the cases.

Setting aside any quibble over a description of the contents of the letters, it is unclear to the Court whether the letters were drafted in anticipation of a litigation, an essential requirement of the work product privilege.[8]   The SAO bears the burden of establishing the document was prepared "*because* of the prospect of litigation when the preparer faces an actual claim or a potential claim following an actual event or series of events that reasonably could result in litigation."  *Nat'l Union Fire Ins. Co.*, 967 F.2d at 984 (emphasis in original).  The draft letters were written at least one year after Mr. Bryant's conviction was vacated on May 11, 2016.  The

---

[8] It is also unclear why document 5, which appears to concern a totally different case, is responsive to the subpoena.  The SAO noted in the privilege log that document 5 is a "draft letter copied from another file," but it did not object to its production on relevance grounds.  Without knowing why this document was in the Bryant prosecution file or whether it is relevant to this case, the Court will assume its relevance because the SAO has not explicitly argued otherwise.

only possible litigation that the Court is aware of that could have been anticipated by Ms. Lipscomb when she drafted the letters was this civil rights lawsuit.  The Court notes that Mr. Treem is counsel of record for the plaintiff in this case.  Even considering the identity of the recipients, the Court cannot discern from the face of the letters whether they were prepared in anticipation of litigation. Even if they were prepared in anticipation of this lawsuit, the Court has no basis to conclude that Ms. Lipscomb drafted the letters because the SAO (as opposed to the individual officers and the Baltimore Police Department) faced a claim or potential claim following an event that reasonably could result in litigation.  The SAO has not met its burden of establishing the work product doctrine applies to documents 4 and 5, and there are no other asserted grounds on which to withhold them. They must be produced.

Date: <u>October 29, 2020</u>                                            <u>        /S/                </u>
                                                                       Deborah L. Boardman
                                                                       United States Magistrate Judge