IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

THE ESTATE OF MALCOM J.
BRYANT,
    *Plaintiff*

v.

BALTIMORE POLICE
DEPARTMENT, *et al.*
    *Defendants.*

Civil Action No. ELH-19-384

**MEMORANDUM**

    This Memorandum resolves an unopposed motion to amend.  The case arises from the wrongful conviction of Malcom J. Bryant in 1999, in the Circuit Court for Baltimore City, for the murder of 16-year-old Toni Bullock.  Mr. Bryant was sentenced to life imprisonment for the murder.  However, Mr. Bryant's convictions were vacated in 2016, following an investigation by the Baltimore City State's Attorney's Office that concluded he was innocent.  One year later, in 2017, Mr. Bryant passed away at the age of 42.

    On February 8, 2019, Mr. Bryant's sons, Lamar Estep and Malique Bryant, as personal representatives of the Estate of Malcom J. Bryant,[1] initiated this civil rights action against the Baltimore City Police Department ("BPD" or the "Department"); former BPD Detective William F. Ritz; former BPD Forensic Analyst Barry Verger; and "unknown employees" of the BPD.  ECF 1 (the "Complaint").  Detective Ritz and Analyst Verger (the "Officer Defendants") are sued in their individual capacities.  *Id.* ¶¶ 15-16.

---

[1] The suit is captioned in the name of the Estate as the plaintiff.  However, in the text, Lamar Estep and Malique Bryant are identified as the personal representatives of the Estate. Because the Estate acts through the personal representatives, I shall refer to them as the plaintiffs. *See* Md. Code (2017 Repl. Vol, 2020 Supp.), § 7-401(y) of the Estates and Trusts Article.

The Complaint contains ten counts. Counts I through V invoke 42 U.S.C. § 1983, and Counts VI through X assert claims under Maryland law. Of relevance here, Count I, titled "Failure to Disclose Exculpatory and Impeachment Evidence to the Prosecution," is lodged against the Officer Defendants, and alleges a violation of due process under the Fifth and Fourteenth Amendments to the Constitution. *Id.* ¶¶ 114-20. In Count I, plaintiffs allege that Detective Ritz and Analyst Verger failed to disclose exculpatory and impeachment evidence to the prosecution, as required by the Supreme Court's ruling in *Brady v. Maryland*, 373 U.S. 83 (1963). In Count V, plaintiffs assert a "*Monell*" claim against the BPD, pursuant to the Fifth and Fourteenth Amendments. *Id.* ¶¶ 138-45; *see Monell v. City Dep't of Soc. Servs. of New York City*, 436 U.S. 658 (1978).

The Officer Defendants and the BPD, respectively, sought dismissal of the suit. ECF 25; ECF 26. By Memorandum Opinion (ECF 41) and Order (ECF 42) of February 10, 2020, I granted in part and denied in part each motion to dismiss. In particular, I denied the Officer Defendants' motion as to Count I, reasoning that plaintiffs had alleged plausible *Brady* claims. ECF 41 at 45; ECF 42.

On January 20, 2021, plaintiffs moved for leave to file an amended complaint. ECF 138 (the "Motion"). As to Analyst Verger, they seek "to specifically allege a § 1983 destruction of exculpatory evidence claim, also known as a '*Youngblood* claim.'" *Id.* at 3; *see Arizona v. Youngblood*, 488 U.S. 51 (1988). Plaintiffs state that they requested defendants' consent to seek leave to amend, pursuant to Local Rule 103(6)(d). *Id.* But, defendants did not consent. *Id.* Nevertheless, defendants have not filed an opposition to the Motion. And, the time to do so has expired.

No hearing is necessary to resolve the Motion. *See* Local Rule 105(6). For the reasons that follow, I shall grant the Motion.

## I. Background

The factual allegations in the Complaint were recounted in my prior Memorandum Opinion and are incorporated here by reference. The facts set forth below are generally pertinent to the pending Motion.

Toni Bullock was stabbed to death in Baltimore on November 20, 1998. ECF 1, ¶ 17. Thereafter, Mr. Bryant was arrested in connection with murder of Ms. Bullock, on charges of first-degree murder and possession of a deadly weapon with intent to injure. *Id.* ¶ 43. The Complaint contains allegations concerning Detective Ritz's role in the investigation and prosecution of Mr. Bryant, which are not at issue here. *See generally id.* ¶¶ 27-73.

In preparation for Mr. Bryant's trial, a sample of Mr. Bryant's blood was drawn for evidence comparison purposes. *Id.* ¶ 74. However, the BPD never tested the evidence obtained from the crime scene for DNA. *Id.* Moreover, Ms. Bullock's clothing was not examined for the presence of blood or DNA. *Id.* ¶ 76. Detective Ritz recovered fingernail clippings from Ms. Bullock as well as hair and blood. *Id.* ¶ 77. The fingernail clippings were sent to Analyst Verger, a BPD forensic analyst, to determine if they contained trace evidence. *Id.* But, Analyst Verger only inspected the fingernail clippings for the presence of blood, not DNA. *Id.* ¶ 78. Although the testing revealed that the clippings contained the assailant's blood, no DNA testing was conducted because Analyst Verger reported that the fingernails were destroyed during testing. *Id.* This report, plaintiffs allege, was "obviously false," because subsequent DNA testing of the same clippings led to Mr. Byrant's exoneration. *Id.* ¶ 79.

In August 1999, Mr. Bryant was tried before a jury in the Circuit Court for Baltimore City. *Id.* ¶ 81. Of pertinence here, because the fingernail clippings were never sent for DNA testing, the jury never learned that the DNA under Ms. Bullock's fingernails did not match that of Mr. Bryant. *Id.* ¶ 84. On August 5, 1999, the jury convicted Mr. Bryant of assault, felony murder, and carrying a concealed weapon. *Id.* ¶ 85. Mr. Bryant was sentenced to life imprisonment for the murder of Ms. Bullock, and to consecutive terms of twenty years on the other charges. *Id.* ¶ 86.

In 2008, Mr. Bryant moved for post-conviction DNA testing. *Id.* ¶ 87. The Circuit Court for Baltimore City granted Mr. Bryant's motion, and the State sent Ms. Bullock's fingernail clippings to the Bode Technology Group ("Bode") for testing. *Id.* Bode compared a partial male DNA sample obtained from Ms. Bullock's fingernail clippings to Mr. Bryant's reference sample. *Id.* The results excluded Mr. Bryant as a possible contributor of the DNA. *Id.* Mr. Bryant's DNA sample was subsequently compared to a DNA profile generated from Ms. Bullock's blood-stained t-shirt. *Id.* ¶ 89. Here too, the DNA profile excluded Mr. Bryant as a source of the DNA. *Id.*

After conducting its own investigation of the case and reviewing the DNA results, the Baltimore City State's Attorney's Office ("BSAO") agreed that Mr. Bryant was innocent. *Id.* ¶ 90. Following a hearing held on May 11, 2016, the Circuit Court for Baltimore City vacated Mr. Bryant's convictions. *Id.* The State entered nolle prosequi dispositions as to each of the counts against Mr. Bryant, and he was released from custody. *Id.* ¶ 91.

In November 2018, the Baltimore Event Review Team ("BERT"), a collaboration between the BSAO, the BPD, the Maryland Office of the Public Defender in Baltimore City, and the University of Baltimore Innocence Project, issued a report on the investigation concerning Mr. Bryant. *Id.* ¶ 8. BERT's review found significant deviations from proper police practices. *Id.* In total, Mr. Bryant spent 17 years in prison for a crime he did not commit. *Id.* ¶ 108.

This suit followed in 2019. After my ruling on defendants' motions to dismiss, discussed *supra*, the BPD filed a consent motion to bifurcate trial of the *Monell* claim and stay discovery as to that claim. ECF 49. By Order of March 11, 2020 (ECF 50), I granted the motion. Since then, the parties have been actively engaged in discovery as to the claims against the Officer Defendants.[2]

I issued an initial Scheduling Order on April 22, 2020. ECF 56. Thereafter, plaintiffs and the Officer Defendants twice filed consent motions to amend the schedule. ECF 61; ECF 78. I granted both motions. ECF 62; ECF 79. My Scheduling Order of July 2, 2020 (ECF 79) set a deadline of July 1, 2020, for amendment of pleadings. Additional amended Scheduling Orders have since issued, but they have not altered the deadline for amendment. ECF 102; ECF 127; ECF 161.

## II. Discussion

### A.

Fed. R. Civ. P. 16(b)(4) concerns modification of scheduling orders. And, Fed. R. Civ. P. 15(a) addresses amendment of pleadings. Both rules govern here.

A complaint may be amended "once as a matter of course" within twenty-one days of service of a defendant's answer or motion under Fed. R. Civ. P. 12(b), (e), or (f), "whichever is earlier." Fed. R. Civ. P. 15(a)(1)(b). "In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). The court "should freely give leave when justice so requires." *Id.* However, where a party "moves to amend after the deadline established in the scheduling order for doing so, Rule 16(b)(4) becomes the

---

[2] There have been several discovery disputes, which are not relevant here. *See* ECF 115, 117, 118, 135, 161.

5

starting point in the Court's analysis." *Wonasue v. Univ. of Maryland Alumni Ass'n*, 295 F.R.D. 104, 106 (D. Md. 2013); *see Faulconer v. Centra Health, Inc.*, 808 F. App'x 148, 152 (4th Cir. 2020).

Fed. R. Civ. P. 16 concerns scheduling and case management. Scheduling orders serve a vital purpose in helping a court manage its civil caseload. *Gestetner Corp. v. Case Equipment Co.*, 108 F.R.D. 138, 141 (D. Me. 1985); *see also Naughton v. Bankier*, 14 Md. App. 641, 653, 691 A.2d 712, 718 (1997) (recognizing that a scheduling order helps "to maximize judicial efficiency and minimize judicial inefficiency"). Notably, "[i]n an era of burgeoning case loads and [crowded] dockets, effective case management has become an essential tool for handling civil litigation." *Tower Ventures, Inc. v. City of Westfield*, 296 F.3d 43, 45 (1st Cir. 2002) (alteration added). To that end, a scheduling order is an important vehicle in "'securing the just, speedy, and inexpensive determination of every action.'" *Miller v. Transcend Services, Inc.*, 10 CV 362, 2013 WL 1632335, at *4 (M.D.N.C. Apr. 16, 2013) (citation omitted).

A scheduling order is also mandatory. Rule 16(b)(1) states that, subject to certain exceptions, "the district judge . . . must issue a scheduling order." Further underscoring the importance of a scheduling order to case management, Rule 16(b)(2) commands that a scheduling order be issued "as soon as practicable" after a defendant has been served or appeared in a case.

Moreover, Rule 16(b)(4) provides: "A schedule may be modified only for good cause and with the judge's consent." Thus, Rule 16 "recognize[s] . . . that the parties will occasionally be unable to meet . . . deadlines [in a scheduling order] because scheduling order deadlines are established relatively early in the litigation." *O'Connell v. Hyatt Hotels of Puerto Rico*, 357 F.3d 152, 154 (1st Cir. 2004). But, under Rule 16(b)(4), a movant must demonstrate good cause to satisfy the requirement for a modification. *See Faulconer*, 808 F. App'x at 152; *Nourison Rug*

6

*Corp. v. Parvizian*, 535 F.3d 295, 298 (4th Cir. 2008); *Wonasue*, 295 F.R.D. at 106-07; *see also United States v. Hartford Accident & Indem. Co.*, No. CV JKB-14-2148, 2016 WL 386218, at *5 (D. Md. Feb. 2, 2016) ("The burden for demonstrating good cause rests on the moving party.").

The "'touchstone'" of Rule 16(b)(4)'s "good cause requirement is 'diligence.'" *Faulconer*, 808 F. App'x at 152 (citation omitted).  The Fourth Circuit has endorsed this proposition several times, in line with other circuits.  *Id.* at 152 n.1 (collecting cases).  "[O]nly diligent efforts to comply with the scheduling order can satisfy Rule 16's good cause standard." *Id.* at 152; *accord Rassoull v. Maximus, Inc.*, 209 F.R.D. 372, 374 (D. Md. 2002) ("Lack of diligence and carelessness are 'hallmarks of failure to meet the good cause standard.'") (citation omitted).

In evaluating diligence, courts focus mainly "on the timeliness of the motion to amend 'and the reasons for its tardy submission.'" *Elat v. Ngoubene*, 993 F. Supp. 2d 497, 520 (D. Md. 2014) (quoting *CBX Techs., Inc. v. GCC Techs., LLC*, No. JKB–10–2112, 2012 WL 3038639, at *4 (D. Md. July 24, 2012)).  Notably, "[c]arelessness is not compatible with a finding of diligence and offers no reason for a grant of relief." *Wonasue*, 295 F.R.D. at 107 (quoting *CBX Technologies, Inc.*, 2012 WL 3038639, at *4).

If, for example, the "moving party knew of the underlying conduct giving rise to a claim but simply failed to raise it in an initial complaint, then the party" has not acted diligently, and thus "cannot establish good cause under Rule 16." *Faulconer,* 808 F. App'x at 152.  In contrast, where "'at least some of the evidence needed for a plaintiff to prove his or her claim did not come to light until after the amendment deadline,' a plaintiff has 'good cause' for moving to amend at a later date." *Wonasue*, 295 F.R.D. at 107 (quoting *Tawwaab v. Va. Linen Serv., Inc.*, 729 F.Supp.2d 757, 768 (D. Md. 2010)).

7

In determining whether the moving party has met his burden to show good cause, courts may also consider "whether the moving party acted in good faith, the length of the delay and its effects, and whether the delay will prejudice the non-moving party." *Elat*, 993 F. Supp. 2d at 520. However, "'[i]f the movant has not been diligent in meeting the scheduling order's deadlines,' then other factors . . . generally will not be considered.'" *Faulconer,* 808 F. App'x at 152 (quoting *Kmak v. Am. Century Cos., Inc.*, 873 F.3d 1030, 1034 (8th Cir. 2017)). Some district court judges have expressed this proposition even more forcefully. *See, e.g.*, *Rassoull*, 209 F.R.D. at 374 ("'If [the moving party] was not diligent, the inquiry should end.'") (citation omitted); *Marcum v. Zimmer*, 163 F.R.D. 250, 254 (S.D.W. Va. 1995) ("'[T]he focus of the inquiry is upon the moving party's reasons for seeking modification. *If that party is not diligent, the inquiries should end*.'" (citation omitted) (emphasis in *Marcum*).

If the moving party demonstrates good cause pursuant to Rule 16(b)(4), he must then "satisfy the liberal standard of Fed. R. Civ. P. 15(a)." *Humane Soc'y of the United States v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, DKC-13-1822, 2016 WL 3668028, at *2 (D. Md. July 11, 2016); *see Cook v. Howard*, 484 Fed. Appx. 805, 814-15 (4th Cir. 2012); *Nourison*, 535 F.3d at 298; *Wonasue*, 295 F.R.D. at 106-07. Under Rule 15(a), a court should deny leave to amend in three circumstances: "'when the amendment would be prejudicial to the opposing party, the moving party has acted in bad faith, or the amendment would be futile.'" *Davison v. Randall*, 912 F.3d 666, 690 (4th Cir. 2019) (quoting *Equal Rights Ctr. v. Niles Bolton Assocs.*, 602 F.3d 597, 603 (4th Cir. 2010)); *see Scott v. Family Dollar Stores, Inc.*, 733 F.3d 105, 121 (4th Cir. 2013); *Johnson v. Oroweat Foods Co*., 785 F.2d 503, 509 (4th Cir. 1986).

In addition, courts have inherent power to manage their own dockets. In *Link v. Wabash R. Co.*, 370 U.S. 626, 632 (1962), the Supreme Court stated that a court's "inherent power" to

8

dismiss a case for lack of prosecution is "governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *See also Woodson v. Surgitek*, 57 F.3d 1406, 1417 (5th Cir. 1995) (observing that courts' inherent power permits "dismissing a case as a sanction for a party's failure to obey court orders").

### B.

Plaintiffs contend that leave to amend is warranted under both Rule 16(b)(4) and Rule 15(a). ECF 138 at 4-5. As noted, the Officer Defendants have not opposed the Motion, despite the fact that they declined to consent to the request for amendment. Therefore, they have waived any opposition to the plaintiffs' argument. *See Stenlund v. Marriot Int'l, Inc.*, 172 F. Supp. 3d 874, 887 (D. Md. 2016) ("In failing to respond to [defendant's] argument, Plaintiff concedes the point."); *Ferdinand-Davenport v. Children's Guild*, 742 F. Supp. 2d 772, 777 (D. Md. 2010) (reasoning similarly); *cf. Pueschel v. United States*, 369 F.3d 345, 354 (4th Cir. 2004) (stating that when a plaintiff fails to oppose a motion to dismiss, a district court is "entitled, as authorized, to rule on the . . . motion and dismiss [the] suit on the uncontroverted bases asserted" in the motion).

As plaintiffs explain, they have been actively engaged in discovery as to the Officer Defendants. However, it was not until August 28, 2020, that "the most basic documents related to [the *Brady* claim against Analyst Verger] were produced, including the full extent of Verger's case file relating to the testing and underlying bench notes." ECF 138 at 2. Thereafter, plaintiffs sought "BPD policies governing the forensic testing Verger conducted and materials relating to training he received." *Id.* Plaintiffs received materials from BPD in September 2020, and two months later received confirmation that no additional policy or training materials would be produced. *Id.* Moreover, plaintiffs "separately requested documents from the non-party Maryland State Police,

9

which conducted the DNA testing on evidence in this case immediately following Verger's forensic testing." *Id.* at 3. Plaintiffs received case files from the State Police in September 2020 and policy documents related to the case files in December 2020. Id.

In light of the material produced in discovery, and based on consultation with plaintiffs' expert, plaintiffs "now believe[] that Verger not only falsely reported that the fingernail evidence was completely consumed, but also in bad faith destroyed red blood stains on these fingernails by willfully conducting needless destructive testing on that evidence." ECF 138 at 3. Therefore, plaintiffs seek leave to amend to assert a *Youngblood* claim.

In *Basden v. Lee*, 290 F.3d 602, 615 (4th Cir. 2002), the Fourth Circuit explained:

> Under *Arizona v. Youngblood,* 488 U.S. 51 (1988), if a criminal defendant can show that the police failed to "preserve potentially useful evidence" with bad faith, he or she has been denied due process. *Id.* at 58. However, "unless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law." *Id.*

It is clear from the Motion as well as the record that the parties have been diligently engaged in discovery. *See Faulconer*, 808 F. App'x at 152. And, evidence pertinent to Analyst Verger's role in the case did not come to light until after the amendment deadline. *See Wonasue*, 295 F.R.D. at 107. Therefore, I conclude that the good cause requirement of Rule 16(b)(4) is satisfied.

So too is the more liberal standard of Rule 15(a) met here. Plainly, plaintiffs do not act in bad faith. Nor will amendment prejudice defendants, as fact discovery continues until June 4, 2021. ECF 161. Moreover, the Officer Defendants have not asserted prejudice or futility, and I see no basis to deny the Motion on such grounds.

10

### III.  Conclusion

For the foregoing reasons, I shall grant the Motion (ECF 518).

An Order follows.

Date: April 6, 2021  /s/
Ellen L. Hollander
United States District Judge

11