UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

CHAMBERS OF
DEBORAH L. BOARDMAN
UNITED STATES MAGISTRATE JUDGE

101 WEST LOMBARD STREET
BALTIMORE, MARYLAND 21201
(410) 962-7810
(410) 962-2577 FAX
MDD_DLBChambers@mdd.uscourts.gov

April 15, 2021

RE: *Estate of Malcolm Bryant v. Baltimore Police Department*
ELH-19-384

## LETTER ORDER

Dear Counsel,

On April 2, 2021, the individual defendants sought leave to take 11 depositions beyond the agreed-upon 15-deposition limit. ECF 162. Plaintiffs opposed the request. ECF 169. In addition, on April 6, 2021, the individual defendants sought to compel production of a more specific privilege log for the approximately 600 documents plaintiffs withheld from the University of Baltimore School of Law's post-conviction file for Malcolm Bryant. ECF 164. In particular, defendants ask for the identification of those documents that relate to the purported "bald sketch" of the alleged murderer of Ms. Bullock. Plaintiffs opposed that request as well. ECF 165. I reviewed the parties' letters and heard their arguments on a call on April 13, 2021. For the reason stated on the call and summarized below, the individual defendants' request to take additional depositions is granted in part, and plaintiffs shall identify the withheld documents that relate to the "bald sketch" and submit them for *in camera* review.

### I. Number of Depositions

The parties previously agreed to 15 depositions per side. ECF 35. The individual defendants soon will exceed their allotted 15 depositions, which include three damages witnesses and two alibi witnesses. They would like to depose five additional alibi witnesses and six additional damages witnesses, all of whom were identified by plaintiffs.[1] Plaintiffs object because they would like to conclude discovery by the current discovery deadline and because the individual defendants have not shown good cause for additional depositions.

I find good cause exists. The depositions the individual defendants have taken thus far appear to have been justified and proportionate to the needs of the case. The witnesses they seek leave to depose have relevant information. All parties have maintained throughout this litigation that Malcolm Bryant's actual innocence is relevant, at the very least, to his claim for damages.

---

[1] The individual defendants initially requested the depositions of an additional seven damages witnesses, including Debria Bryant and Debria Hendricks. Defs.' Dep. Ltr. 1. Plaintiffs clarified that Debria Bryant and Debria Hendricks are the same person. Pls.' Dep. Ltr. 1–2 n.1

The proposed alibi witnesses may have knowledge about Mr. Bryant's whereabouts on the night of the murder, and the damages witnesses may have knowledge about the impact of Mr. Bryant's incarceration and wrongful conviction on him. In Section 1983 actions based on decades of incarceration following a wrongful conviction, plaintiffs often seek millions of dollars in damages. This case is no different. Thus, whether Mr. Bryant was actually innocent of the crime and the extent of his pain and suffering as a result of his wrongful conviction are highly significant issues in this case, and the additional witnesses' testimony on these topics is proportionate to the needs of the case and not cumulative. *See* Fed. R. Civ. P. 26(b)(1); *Faust v. Comcast Cable Commc'ns Mgmt., LLC*, No. WMN-10-2336, 2013 WL 1395933, at *2 (D. Md. Apr. 3, 2013).

Defendants may depose the five additional alibi witnesses for up to one hour each. The parties shall work together to complete these depositions before the close of fact discovery on June 4, 2021. ECF 161.

As for the six damages witnesses, the individual defendants concede their testimony may be cumulative, but without a more descriptive summary of the nature of each witness's knowledge, they are unable to limit the number of witnesses they would like to depose. Plaintiffs correctly point out that the defendants do not have the right to depose every witness with relevant information. While this is true, these witnesses, all of whom are Mr. Bryant's family, have information relevant to damages, and the amount of damages, if any, will be significantly contested at trial. To reduce the possibility of cumulative testimony, I asked plaintiffs to provide defendants with more information about the scope of each witness's knowledge regarding damages. By April 16, 2021, plaintiffs shall provide this information to the individual defendants. The parties shall meet and confer in an effort to compromise on the number of additional damages witnesses with non-cumulative information.

## II. Privilege Log

The individual defendants ask the Court to compel plaintiffs to produce a privilege log that identifies the documents relating to the "bald sketch" of the alleged perpetrator that were withheld from Mr. Bryant's post-conviction file. They suspect that plaintiffs, Mr. Bryant, or their agents manufactured the "bald sketch" in an attempt to exonerate Mr. Bryant with counterfeit evidence and pretended the exculpatory sketch was included in the BPD file produced to post-conviction counsel through a Maryland Public Information Action request. Plaintiffs recently have withdrawn their *Brady* claim based on the "bald sketch" and do not intend to introduce it or refer to it at trial. Notwithstanding this development, defendants insist the "bald sketch" remains relevant for several reasons. They claim that the *Brady* claim based on the "bald sketch" remains in the operative complaint. They argue that evidence of the document's fabrication could undermine the integrity of other evidence on which plaintiffs rely in support of their *Brady* claims. Mostly, they argue that the existence of a fabricated document that forms the basis for one of plaintiffs' claims, even if that claim is no longer being pursued, infects the integrity of the entire case and could provide a basis for dismissal of the complaint. Plaintiffs fundamentally disagree, arguing the "bald sketch" is no longer relevant to any claim and defending their decision to drop the "bald sketch" *Brady* claim as an appropriate and proper litigation decision. Plaintiffs also argue that it would be burdensome for them to cull through the approximately 9,000 pages in the post-conviction file to identify documents relating to the "bald sketch."

I find the documents relating to the "bald sketch" are relevant to the defenses proffered by the individual defendants. Whether the documents, if they exist, support grounds for dismissal of the case and whether the documents are admissible at trial will be determined by Judge Hollander.

Plaintiffs' 33-page, nearly 600-entry privilege is generally compliant with Rule 26, which requires a party asserting privilege to "describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." Fed. R. Civ. P. 26(b)(5)(A)(ii). However, it does not identify those documents relating to the "bald sketch," and therefore defendant cannot challenge the grounds for withholding those documents.

Accordingly, by April 23, 2021, plaintiffs will specify in the privilege log those documents that relate the "bald sketch." By the same date, plaintiffs will submit the "bald sketch" documents to me for *in camera* review. Any portions of the documents that plaintiffs contend are opinion work product should be highlighted. After I review the documents, I will advise counsel whether additional briefing regarding disclosure of the documents to the defendants is necessary.

Although informal, this is an Order of the Court and shall be docketed as such.

Sincerely,

_____/S/_____
Deborah L. Boardman
United States Magistrate Judge