

**BRIAN E. FROSH**
*Attorney General*

**ELIZABETH F. HARRIS**
*Chief Deputy Attorney General*

**CAROLYN QUATTROCKI**
*Deputy Attorney General*

# STATE OF MARYLAND
## OFFICE OF THE ATTORNEY GENERAL

FACSIMILE NO.
410-576-6437

WRITER'S DIRECT DIAL NO.
(410) 576-6559
clord@oag.state.md.us

May 12, 2021

The Honorable Deborah L. Boardman
United States Magistrate Judge
United States District Court for the District of Maryland
101 West Lombard Street
Baltimore, Maryland 21201

    Re:    *Estate of Malcolm Bryant, et al v. Baltimore Police Department, et al*
              United States District Court for the District of Maryland
              No. 1:19-cv-00384-ELH

Dear Judge Boardman:

        The Office of the Attorney General represents the University of Baltimore ("UB"). I am writing to express UB's opposition to the Individual Defendants' ("Defendants") request that they be allowed to depose former UB Law Students who worked on the Malcolm Bryant case while they were members of the Innocence Project Clinic ("IPC"). While UB is not a direct party in that request, it has significant concerns because deposing its former law students will likely implicate: the IPC's attorney work product privileges; Mr. Bryant's attorney-client privileges; and the students' FERPA rights (20 U.S.C. § 1232g; 34 CFR Part 99). In addition, UB is very concerned that allowing such depositions will have a chilling effect on clinical participation by its law students and set a dangerous precedent, whereby parties in cases can bypass appropriate channels of discovery and instead seek privileged information from former law students about what work they did in their clinic programs. Accordingly, UB requests that the Court deny Defendants' request to depose its former law students.

        The background to this matter, including IPC's role in representing Mr. Bryant in his post-conviction proceedings and Defendants' third-party subpoenas to UB, is set forth in my letter of today's date objecting to Defendant's request that UB conduct a search 13,000+ accounts for emails containing various search terms. This letter focuses on Defendants' request to depose former UB law students. UB made Defendants aware of its objections to this request in its April 30 objection letter, which is attached as Exhibit 4 to my letter regarding the emails.

        While Defendants have not disclosed to UB the subject of their proposed depositions of the former IPC student attorneys, presumably such questions will concern the work they did in the clinic and specifically what they did in connection with IPC's representation of Mr. Bryant. The IPC, like other law school clinics, is both a law firm and an academic program, representing clients on an attorney/client basis while providing legal instruction to its students. It would be virtually

May 12, 2021
Page 2

impossible to depose former IPC students about anything they did within the IPC without implicating attorney privileges and FERPA. Therefore, as set forth in my April 30 letter and herein, there are multiple reasons why the Court should disallow this request.

First, deposing former students about legal work they did in the IPC would likely infringe on significant attorney client and attorney work product privileges in connection with their work as student attorneys in representing Mr. Bryant and other IPC clients. Presumably, Defendants intend to ask the students about the so-called "bald sketch" – questions about which Professor Michele Nethercott has already been deposed extensively. The students would be asked to reveal what legal work they did, what legal theories and evidence were being considered, and what instruction and guidance they received – all in the context of the IPC's active representation of Mr. Bryant in his post-conviction legal proceedings. These subject matters are clearly protected by Mr. Bryant's attorney-client privileges and the IPC attorneys' work product privileges. Indeed, such inquiries are exactly the form of discovery which the Supreme Court has held is "inviolate":

> In performing his various duties, however, it is essential that a lawyer work with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel. Proper preparation of a client's case demands that he assemble information, sift what he considers to be the relevant from the irrelevant facts, prepare his legal theories and plan his strategy without undue and needless interference. . . . This work is reflected, of course, in interviews, statements, memoranda, correspondence, briefs, mental impressions, personal beliefs, and countless other tangible and intangible ways…. An attorney's thoughts, heretofore inviolate, would not be his own. Inefficiency, unfairness and sharp practices would inevitably develop in the giving of legal advice and in the preparation of cases for trial. The effect on the legal profession would be demoralizing. And the interests of the clients and the cause of justice would be poorly served.

*Hickman v. Taylor,* 329 U.S. 495, 510–11 (1947). The risks to these values and principles is even more troubling when an adverse party seeks to depose former students and junior attorneys, as opposed to lead counsel, as the former students will likely have even less ability to discern and protect their clients' and their own rights. In short, there is simply no basis to allow counsel for Defendants to question the former IPC students about any of the legal work they did or what they observed other IPC attorneys doing on behalf of Mr. Bryant or other IPC clients.

Second, deposing former students about legal work they did in the IPC almost certainly implicates significant FERPA concerns. UB, as mandated by the ABA Standards for Approval of Law Schools, Standard 303(a)(3), requires all of its law students to participate in experiential education, which includes enrolling in one of its eleven clinics. Such experience is vital to their legal education. Clinical education not only entails representing clients, but educates students about *how* to represent clients, and these distinct goals often merge in emails and other communications. Therefore, many emails by or to students would constitute "education records" (as defined in 20 U.S.C. § 1232g(a)(4)) protected by FERPA. FERPA generally provides that educational records are confidential and prohibits their release by educational institutions except as authorized by FERPA and its associated regulations. 20 U.S.C. § 1232g(b)(1); 34 CFR Part 99. When educational records are subpoenaed from schools, students and former students have an express right (subject to certain exceptions) to notice of such subpoena and the right to object

thereto. 34 C.F.R. § 99.31 (a)(9)(ii).  At a minimum, the legal issues surrounding what is and is not protected by FERPA are complex, and the former students may be forced to engage private counsel, at their own considerable expense, to protect their federally guaranteed rights.

Third, forcing former law students to be deposed about legal and academic work they did in a university legal clinic would have a chilling effect on student participation in legal clinics and set a terrible precedent. Recent graduates would necessarily be very concerned about being hauled into a deposition to answer questions about their clinic experience.  This would lead to the perverse result of transforming legal education into a basis for civil discovery.  Students would also likely be forced to obtain counsel at significant personal expense. Moreover, if former students can later be forced to be deposed about their experiences, students may object to clinic participation – especially in clinics such as IPC, given the legal issues it handles – and it would be contrary to the students' educational experiences and the rights of the clinics' clients.

Finally, allowing these depositions will impose further unreasonable demands and undue burdens on UB.  It would be forced to have counsel attend every deposition to protect its interests and the interests of its former and current clients.  UB should not be required to undergo such additional substantial time and expense in connection with this matter, especially when there is no possible reason why former students' testimony would be relevant to Plaintiffs' contentions regarding a criminal investigation and prosecution that happened over a decade before they enrolled in the Law School – and since IPC's successful representation of Mr. Bryant was based on DNA evidence and not on the so-called "bald sketch."  It would also likely lead to additional burdens on the Court, as UB anticipates that there would be numerous objections and instructions to not answer in such depositions, leading to repeated requests for rulings by the Court.

For all of the foregoing reasons, UB requests that the Court deny Defendants' request to depose former UB law students and other IPC staff or attorneys.

Sincerely,

**Christopher B. Lord**

Christopher B. Lord
Assistant Attorney General

Cc:   All counsel (via ECF)