**NATHAN & KAMIONSKI LLP**

Avi Kamionski
*Partner*
akamionski@nklawllp.com
(312) 612-1928

May 12, 2021

**VIA Electronic Filing**
Honorable Deborah L. Boardman
United States District Court
101 West Lombard Street, 3C
Baltimore, Maryland 21201

      RE:   *The Estate of Malcom J. Bryant v. Baltimore City Police Department, et al.*
              Case No.: 1:19-CV-00384-ELH

Dear Judge Boardman,

      On March 29, 2021, this Court found good cause to extend discovery, in part, to allow defendants to explore the issue of whether the "bald sketch" produced by plaintiffs as part of the originally scanned UB Law file was fraudulent. *See* Dkt. 161. On April 15, 2021, this Court ruled that "documents relating to the 'bald sketch' are relevant to the defenses proffered by the individual defendants," and ordered plaintiffs to identify and produce for *in camera* inspection all documents from Michelle Nethercott's file that relate to the "bald sketch." Dkt. 172. On April 23, 2021, the documents related to the "bald sketch" were identified and tendered to the Court for *in camera* inspection.

**"Bald Sketch" Discovery To Date**

      As previously explained, the substantial likelihood that the "bald sketch" is a fabricated and fraudulent document generated to take on the guise of legitimate *Brady* evidence is multifaceted. First, the "bald sketch" is suspicious on its face because the head is misshapen, appears to have remnants of the hairline from the composite sketch with the bushy hair, and is not the product of the EFIT composite program. Dr. Christopher Solomon, the managing director of Visionmetric Ltd, the developers and worldwide owners of the EFIT facial composite software products, the same software used to create the composite sketch in this case, reviewed the "bald sketch" and issued the following opinion:

> I am confident that [the "bald sketch"] was not created exclusively using EFIT components because EFIT does not contain any baldheaded image components that look like [the "bald sketch"]… It is readily apparent [the "bald sketch"] been created by manipulating an original EFIT image.

*See* Affidavit of Dr. Christopher Solomon at p. 2 attached hereto as Exhibit 1. Second, the "bald sketch" has a diverging line under the final six words of the third line and the beginning of the fourth line identical to a composite (with hair) in Larry Roger's criminal defense file. This strongly suggests that the "bald sketch" was created from the underlined version of the genuine composite sketch (Rogers-File-118) which existed in the criminal defense file of attorney Larry Rogers as it was scanned by Plaintiff in 2016 and produced in this litigation. Here is a side-by-side comparison:



On February 4, 2021, Ms. Nethercott's was confronted with this evidence at her first deposition and offered no explanation for how the "bald sketch" could have the same underline marks as Rogers-File-118 and does not exist in any other file. *See* Nethercott Deposition Transcript 189:21-191:5 attached hereto as Exhibit 2. On February 11, 2021 the parties conducted an in-person inspection of the Nethercott's file, including the trial file. During this inspection it became clear that someone removed Rogers-File-118 and replaced it with a non-underlined composite sketch. At the same time, a version of the underline sketch (slightly different than Rogers-File-118), as well as several other copies the sketch, with and without hair, were discovered in Nethercott's collection of documents she claims to have received in response to an MPIA request to BPD.

On April 14, 2021, Ms. Nethercott, as corporate designee of the University of Baltimore Innocence Project Clinic ("UBIPC"), was questioned about how, when, and why the sole composite sketch, Rogers-File-118, with its distinct underlines and highlights, was removed from the Larry Rogers' criminal defense file and replaced with a non-underlined sketch. *See* UBIPC 30(b)(6) Deposition Transcript 70:17-74:1 attached hereto as Exhibit 3. Nethercott speculated documents may have been "commingled" and she may have replaced Rogers-File-118 with a non-underlined sketch (more on this below), but no one has come forward to explain why Rogers-File-118 has completely disappeared, despite being produced in this case in an electronic form in 2020. Ex. 3 at 74:9-17.

**Joshua Treem Possesses Relevant Factual Information Relating to the Origins of the "Bald Sketch" and the Disappearance of Rogers-File-118.**

Ms. Nethercott testified that on or about June 28, 2016 she personally delivered her Malcom Bryant file to Joshua Treem at Brown Goldstein and Levy ("BGL"). Ex. 3 at 47:1-20. Treem was Nethercott's primary contact at BGL. *Id.* at 44:15-20. Per Nethercott, Treem kept the file for several weeks before returning it to UBIPC. *Id.* at 48:11-16. Upon return to UBIPC, the file was placed in a locked key-card-access-only file room. *Id.*, *see also Id.* at 29:20-30:15. Since that time, Nethercott said the file was retrieved on at least two occasions prior to her deposition. *Id.* at 29:20-30:20. Nethercott did confess she went to this locked file room the same day, following her deposition, but denied touching the Bryant file at that time. *Id.* at 34:16-35:8, 35:20-36:2. Nevertheless, Nethercott admitted that she may be-the-one who replaced the underline sketch (Rogers-File-118) with a non-underlined version at some point. *Id.* at 74:2-17. Nethercott said the non-underlined version of the sketch is the one she *actually* remembers seeing in the Rogers file and proposed that the underlined version (Rogers-File-118) was somehow accidently "commingled" into that slot. *Id.* at 74:9-76:8. Nethercott suggested she may have re-arranged the file to comport with her memory – replacing Rogers-File-118 with a non-underlined version of the sketch. *Id.* at

74:4-75:2. (Nethercott: "I can't exclude the possibility it was me, but I don't really know."). The "commingled" story, however, makes no sense. First, if the file was merely "commingled," where is Rogers-File-118 today? Second, at least four additional copies of the sketch, and a whole new box of documents, were uncovered at physical inspection that were never previously produced. In light of the serious discrepancies in the file production, including the missing Rogers-File-118 and the production of additional sketches, defendants seek documents and the deposition of the only other known person to access the Bryant file in proximity to the first file scan– Joshua Treem[1].

Interestingly, several months before the Bryant file was scanned, Treem, counsel for plaintiff in *James Owens v. Mayor and City Council of Baltimore et al,* 11-cv-03295, filed an expert report prepared by Nethercott dated February 1, 2016. *See* Affidavit of Michelle Nethercott Dated Feb. 1, 2016, attached hereto as Exhibit 4. In *Owens*, Nethercott's report identified several cases, including Malcom Bryant, where she claimed to have uncovered *Brady* violations allegedly committed by BPD. Ex. 4 at p. 7, *see also id.* at pp. 3-12. This 12-page affidavit offers many details of these alleged *Brady* violations. Ex. 3 at 127:15-129:10. The Bryant case is discussed on page 7 of the affidavit. While Nethercott references her MPIA request and a letter from an Assistant States Attorney discussing multiple composite sketches, the affidavit makes no mention of the "bald sketch" Nethercott allegedly received from this MPIA request. If the "bald sketch" was actually withheld by BPD and only discovered by Nethercott through an MPIA request, why was this obvious *Brady* material (a never before seen "bald sketch") not mentioned in her expert report on BPD *Brady* violations? Ex. 3 at 137:10-21. Did Treem know of this glaring omission? What did Treem know of this "bald sketch" in February 2016? Did Nethercott and Treem fail to mention the "bald sketch" in Nethercott's affidavit because they knew it was fabricated? Had this "bald sketch" even been fabricated at the time Nethercott signed her affidavit for the *Owens* case?

At this point, Defendants have made, at least, a *prima facia* showing that the "bald sketch" was likely fabricated. *United States v. Ruhbayan*, 201 F. Supp. 2d 682, 685 (E.D. Va. 2002)("In order for the crime-fraud exception to apply, the government must make a prima facie showing that the communication it seeks falls within the crime-fraud exception, but it need not offer absolute proof of fraud or crime."). A *prime facia* showing includes "(1) that [party] was engaged in or planning a criminal or fraudulent scheme and used his counsel to further the scheme, and (2) that the privileged information bears a close relationship to the criminal or fraudulent scheme." *Chaudhry v. Gallerizzo*, 174 F.3d 394, 403 (4th Cir.1999). More on the applicability of the crime-fraud exception will be explained in Defendants briefing scheduled to be filed on May 14, 2021.

Here are the facts: (1) the "bald sketch" is inherently suspicious. Lauren Lipscomb, Chief of the Baltimore City State's Attorney's Office Conviction Integrity Unit, in response to a question from plaintiff's counsel, said it best: "What you just flashed up looked like some sort of photoshopped document." *See* Lipscomb Deposition Transcript 234:16-235:4 attached hereto as Exhibit 5; (2) the "bald sketch" contains the same underlines as Rogers-File-118 and thus was created by removing the hair from a copy of Rogers-File-118; (3) Rogers-File-118 was produced in discovery as the only underlined version of the sketch; (4) the "bald sketch" was used in this litigation as evidence to support plaintiffs' *Brady* claim; and (5) after questioning Ms. Nethercott about the sketches, the parties discovered that someone

---

[1] According to a federal indictment, between May 5, 2013 and December 11, 2018, Mr. Treem allegedly "preprepared false documents, including an affidavit…and a letter to a United States District Judge...These documents were fraudulently prepared to undermine and impeach [] credibility [of a witnesses] in a [] trial…and to provide false evidence". (*USA v. Ravenell*, 19-cr-449 Dkt 139 at 19-21).

removed Rogers-File-118 from the Bryant trial file and added additional copies of the sketch to make it appear that the bald sketch, even if photoshopped, could have occurred at BPD.

Who participated in creating this "bald sketch", when did this occur and who destroyed Rogers-File-118 are fair and reasonable questions. As such, Defendants seek deposition testimony from Mr. Treem to explore his factual knowledge of the Bryant's file, chain of custody, and scanning; any factual knowledge he has regarding the "bald sketch" being fabricated; and what occurred to Rogers-File-118, the document that was likely used to create the "bald sketch."

**Nethercott UB Law Emails**

Defendants seek all UB emails that contain the terms that contain the words "Bryant" and "sketch", "bald sketch", "composite", or "flyer" from January 1, 2016 to the present. For all the same reasons discussed above, the Court should order UB to produce all responsive emails for *in camera* inspection.

**Nethercott Personal Yahoo Emails**

Ms. Nethercott has represented that she has no personal emails containing the words "Bryant" and "sketch", "bald sketch", "composite", or "flyer". In light of this representation, this request is moot.

**Former UB Law Students**

Per the Court's April 15, 2021 order, Plaintiff identified all the entries on the 33-page privilege log that relate to the "bald sketch." The following "bald sketch" related entries on plaintiffs' privilege log suggest that several former law students have knowledge of the "bald sketch."

| 11/24/2015 | Letter from Malcolm Bryant to "**Mr. Kotzias**" in file of post-conviction counsel re: investigation | UBIP 004031 |
| --- | --- | --- |
| 11/18/2009 | Transfer memo from **Itamar Ezaoui**, UBIP student attorney, to Professors Harris and Nethercott in file of post- conviction counsel | UBIP 004297-4311 |
| 10/7/2009 | Meeting notes and to do list from **Stacie Simon**, **Jayme Levy**, and **Itamar Ezaoui**, UBIP student attorneys, in file of post- conviction | UBIP 004318-4319 |
| 10/21/2009 | Meeting notes and to do list from **Stacie Simon**, **Jayme Levy**, and **Itamar Ezaoui**, UBIP student attorneys, in file of post- conviction | UBIP 004330 |
| 11/2/2009 11/9/2009 | Draft list of work performed by **J Levy** and **I Ezaoui**, UBIP student attorneys, in file of post-conviction counsel | UBIP 004337-4339 |
| 9 and 12/2009 | Various meeting notes and to do list from **Stacie Simon**, **Jayme Levy**, and **Itamar Ezaoui**, UBIP student attorneys, in file of post- | UBIP 004349-4353 |
| 5/25/2010 | Memo from **Itamar Ezaoui**, UBIP student attorney, to Michele Nethercott in file of post-conviction counsel | UBIP 005215-5238 |
| 4/22/2013 | Letter from Malcolm Bryant to "**Mr. Leamarri**," from text of letter believed to be attorney, re: case theories and suggestions for writ in file of post conviction counsel | UBIP 005930-5932 |

In addition, Bryant discussed his case with law students working for Ms. Nethercott over recorded prison lines. On April 23, 2015 at 21:29:03, Bryant, on a three-way, called former law student Alisha Delacruz on her cell phone and to let her know he is mailing original documents to her attention and he would like the original documents returned to him. Ms. Delacruz indicated she would speak with another

student Alison Steinberg and Ms. Nethercott about this mailing. *See* Exhibit 6, Bryant - 04.23.2015 Phone Call. On May 4, 2015 at 20:44:41, Bryant, on a three-way, called to Allison Steinberg, another former law student, to check if she received the mailing. Steinberg and Bryant discussed the post-conviction efforts planned on his behalf - including UBIPC's intention to raise a variety issues including the "second composite sketch" together with DNA and "make all of those come together to show why [Bryant] deserves a new trial." Steinberg said: "I feel really hopeful about where we are headed." *See* Exhibit 7, Bryant – 05.04.2015 Phone Call. As such, for the same reasons discussed above, Defendants seek limited depositions of former law students to inquire about the students' knowledge on the origins of the "bald sketch."

Respectfully Submitted,

/s/
Avi T. Kamionski, Bar No. 20703
Shneur Nathan, Bar No. 20707
Theresa Concepcion, Bar No. 21143
Matthew J. Mc Carter, Bar No.21032
Michael J. Elliker, Bar No. 20810
Jasmine R. England-Caesar, Bar No. 21515
Nathan & Kamionski LLP
33 W. Monroe St., Suite 1830
Chicago, IL 60603
Tel: (312) 612-1955
akamionski@nklawllp.com
snathan@nklawllp.com
tconcepcion@nklawllp.com
mmccarter@nklawllp.com
melliker@nklawllp.com
jasmine@nklawllp.com
*Attorneys for William Ritz and Barry Verger*