

Neufeld Scheck & Brustin, LLP

Tel: [212] 965-9081  
Fax: [212] 965-9084

99 Hudson Street, 8th Floor  
New York, New York 10013  
nsbcivilrights.com

May 12, 2021

Hon. Deborah L. Boardman  
United States District Court  
101 West Lombard Street, 3C  
Baltimore, Maryland 21201

    Re:  *Estate of Malcolm J. Bryant v. Baltimore City Police Dep't, et al.*, No. 1:19-cv-00384

Dear Judge Boardman:

During Defendant Verger's April 21, 2021 Zoom deposition, the Court held a conference to discuss concerns that defense counsel was improperly coaching the witness, in violation of L.R. Appendix A, Discovery Guideline 6(f) and (g). Based on counsel's unequivocal representation that he had neither coached Verger nor discussed the substance of his testimony with him at all during breaks, the Court declined to inquire further. However, the Court did not have the benefit of Verger's subsequent testimony or the full transcript, both of which strongly suggest counsel had in fact coached Verger during a break and had misrepresented his conduct to the Court.

At his deposition, Verger admitted that, although he knew about the request for testing on the victim's fingernails for comparison to Bryant, he employed the destructive leucomalachite green (LG) test to knowingly and systematically destroy all red stains under the victim's fingernails.[1] Ex. A, Verger Dep., at 83–84, 107–14, 116, 126, 128–30, 135, 328. Defendants claim that Verger was complying with an alleged requirement of the Maryland State Police (MSP) laboratory that LG testing for the presence of blood be done before evidence was submitted for DNA testing.[2] Plaintiff denies that MSP had any such requirement.

Verger admitted Plaintiff was correct. For example, when Plaintiff's counsel asked Verger whether there was "any reason why [he] would need to conduct leucomalachite green testing on fingernails when DNA testing is what was requested," Verger responded "I wouldn't." Ex A. at 207; *see also id.* at 209–10 (admitting can't think of reason to perform LG testing in response to a request for DNA testing on nails). Verger then went on to testify repeatedly that he "d[idn't] remember," or "d[idn't] recollect" any requirement to conduct LG testing before sending samples out for DNA testing. *Id.* at 255–56; *see also id.* at 257 (Q. "[S]o in 1999 you don't recall there being any MSP policies requiring [LG] testing?" A. "I don't recollect knowing that."). Plaintiff's counsel then showed Verger his testimony from Bryant's 1999 criminal trial.[3] Upon reviewing the testimony, Verger agreed that he had also testified at the 1999 trial that he "did not

---

[1] Verger admitted that he understood the red stains he destroyed could have been the true perpetrator's blood which could have been used for comparison to Bryant through DNA testing. Ex. A at 126, 328–29.

[2] None of the laboratory protocols produced during discovery by MSP or Baltimore Police Department substantiate Defendants' claim that such a requirement existed.

[3] Verger had also already carefully reviewed his trial testimony—which spans only 18 pages—as part of his preparation for the deposition. *See* Ex. A at 17, 19.

believe that there was a protocol requiring [him] to do [LG] testing before DNA testing." *Id.* at 258. Verger then confirmed—again—that he had no recollection today of there being any MSP requirement for him to conduct LG testing. *Id.* at 258–9 ("Yeah, I don't recollect that being the case."); *id.* at 260 ("I said I thought it wasn't required."). He also agreed such a requirement would not make any sense since the LG test is destructive. *Id.* at 256–57.

At this point, defense counsel—who was off-camera but sitting beside Verger—began making speaking objections and pointing Verger to specific testimony. *Id.* at 261–63. When Plaintiff's counsel objected to coaching, defense counsel refused to turn his camera on and insisted on an immediate break. *Id.* at 263–64. Immediately after the eight-minute break, Verger suddenly and changed his testimony, claiming that MSP *did in fact* require LG testing for the presence of blood. *Id. at* 266–68. It was at this point the parties called the Court, *see id.* at 269–72, and defense counsel represented he and Verger had had no substantive discussions during the break.

After the call with the Court, Verger disclaimed his earlier deposition testimony that he did not remember any MSP requirement for LG testing; Verger claimed he "wasn't thinking very clearly" then but had "remember[ed]" there was a requirement during the break he took with his counsel. *Id.* at 276, 278–80; *see also id.* at 276–77 ("[I]t came to my light that they do require that you do some testing before…they test for DNA"). Defense counsel refused to let Verger answer questions regarding what he had discussed with counsel during the break, *id.* a 269, 283–84, but Verger testified that his counsel gave him specific testimony, told him to "read the pages," and "that's the reason why I'm saying that I did the [LG] test," *id.* at 284–85. But when pressed to explain his new-found memory, Verger waivered, first saying it was "not the MSP rules, per se" but rather a "Baltimore City" requirement, *id.* at 286–87, then admitting he didn't know whose requirement it was at all and that he was "not familiar with the MSP rule," *id.* at 290.[4] Tellingly, the *only* testimony defense counsel elicited from Verger at the deposition (through leading questions) was about the so-called MSP requirement. *Id.* at 369–71.

Plaintiff is not at this time seeking any sanctions related to deposition misconduct. *Cf. Boyd v. Univ. of Maryland Med. Sys.*, 173 F.R.D. 143, 146 (D. Md. 1997) (noting violation of discovery guidelines "is considered by the Court in resolving discovery disputes, including whether sanctions should be imposed"). Plaintiff merely seeks to preserve a record so that it may pursue any appropriate sanctions before trial. Plaintiff requests an order permitting limited reopening of Verger's deposition for the purpose of questioning him regarding the substance of his conversations with counsel during breaks in the deposition.[5] Alternatively, Plaintiff requests that the Court examine Verger *in camera* on this issue. *See, e.g., Vnuk v. Berwick Hosp. Co.,* No. 3:14-CV-01432, 2016 WL 907714, at *45 (M.D. Pa. Mar. 2, 2016) (holding any communication between counsel and a witness during a deposition is not only "wholly inappropriate, unprofessional, and…[potentially] sanctionable" but also "not privileged [such that it] must be disclosed to opposing counsel upon such counsel's inquiry").

---

[4] Verger's claim that "it came to [his] light" that MSP required LG testing is particularly suspicious given his repeated testimony disclaiming memory of anything from 1999. *See* Ex. A at 277, 336–38, 353, 355.

[5] Plaintiff also requests the ability to question Verger about any substantive discussions regarding his testimony with defense counsel since the deposition, in light of Plaintiff's request to keep the deposition open pending resolution of this dispute. Ex. A at 382–84.

2

Respectfully,

_____/s/_____
Nick Brustin (Pro hac vice)
Anna Benvenutti Hoffmann (Pro hac vice)
Amelia Green (Pro hac vice)
Yasmin Dagne (Pro hac vice)
Neufeld Scheck & Brustin, LLP
99 Hudson Street, 8th Floor
New York, NY 10013
nick@nsbcivilrights.com
anna@nsbcivilrights.com
amelia@nsbcivilrights.com
yasmin@nsbcivilrights.com
T: (212) 965-9081/ F: (212) 965-9084

Joshua R. Treem (Bar No. 00037)
Jean Zachariasiewicz (Bar No. 19734)
Chelsea J. Crawford (Bar No. 19155)
Anisha Queen (Bar No. 20766)
Brown, Goldstein & Levy, LLP
120 E. Baltimore Street, Suite 1700
Baltimore, Maryland 21201
jtreem@browngold.com
jmz@browngold.com
ccrawford@browngold.com
aqueen@browngold.com
T: (410) 962-1030/ F: (410) 385-0869

*Attorneys for Plaintiff*