# NATHAN & KAMIONSKI LLP

Avi Kamionski
*Partner*
akamionski@nklawllp.com
(312) 612-1928

May 14, 2021

**VIA ELECTRONIC FILING ON CM/ECF**
Honorable Deborah L. Boardman
Edward A. Garmatz Courthouse
101 W. Lombard St., 3C
Baltimore, MD 21201

RE:     *The Estate of Malcolm J. Bryant v. Baltimore City Police Department, et al.*
            **Case No.: 1:19-CV-00384-ELH**

Dear Judge Boardman:

Plaintiff or his agents fabricated the "bald sketch" in order to gin up a *Brady* claim where there otherwise would be no actionable civil claim. Tellingly, Plaintiff now seeks to back away from the cornerstone of his case after Defendants established through several different avenues that the "bald sketch" is not genuine. See, *e.g.*, ECF 184 (submitting the affidavit of Dr. Christopher Solomon regarding the impossibility of the "bald sketch" being created through the EFIT software utilized by BPD and explaining that the "bald sketch" was likely fabricated from a specific, underlined and highlighted document contained within Plaintiff's criminal defense file). However, where there is smoke there is fire and, with every passing day, it appears that more evidence is uncovered to demonstrate that the "bald sketch" was an outright fabrication. For the reasons described below, the documents relating to the "bald sketch" reviewed *in camera* should be tendered to Defendants in the interests of justice under the crime fraud exception.

The term "crime/fraud exception," is "a bit of a misnomer," *Blanchard v. EdgeMark Fin. Corp.*, 192 F.R.D. 233, 241 (N.D. Ill. 2000), as many courts have applied the exception to situations falling well outside the definitions of crime or fraud. *E.g.*, *Barrott v. Wilson*, 707 F.2d 1262, 1271 (11th Cir. 1983) (stating that crime/fraud exception applies to work product created as a result of lawyer's "unprofessional conduct"); *Cleveland Hair clinic, Inc. v. Puig*, 968 F. Supp. 1227, 1241 (N.D. Ill. 1996) (holding crime/fraud exception applicable to communications made in furtherance of "bad faith litigation conduct"). Attorney work product materials related to evidence fabricated to advance a plaintiff's claims neither "work for the advancement of justice" nor further the "rightful interests" of an attorney's client. *Hickman v. Taylor*, 329 U.S. 495, 510 (1947). To compel production of fact work product under the crime/fraud exception, the party asserting the exception must make a prima facie showing that "(1) the client was engaged in or planning a criminal or fraudulent scheme when he sought the advice of counsel to further the scheme and (2) the documents containing [the privileged materials] . . . bear a close relationship to the client's existing or future scheme to commit a crime or fraud." *In re Grand Jury Subpoena*, 870 F.3d 312, 319 (4th Cir. 2017) (cleaned up). The same standard applies to override attorney-client privilege. *In re Grand Jury Proceedings # 5 Empaneled Jan. 28, 2004*, 401 F.3d 247, 251 (4th Cir. 2005). To compel the production of opinion work product, the party asserting the exception must also show that "the attorney in question was aware of or a knowing participant in the criminal conduct." *Id.* (quotation omitted). In satisfying the prima facie standard, the proof "must be such as to subject the opposing party to the risk of non-persuasion if the evidence as to the disputed fact is left unrebutted." *Id.*

**NATHAN &**
**KAMIONSKI LLP**

(quotation omitted); see *In re Grand Jury Proceedings*, 102 F.3d 748, 752 (4th Cir. 1996) (finding that crime/fraud exception applied even though attorneys at issue unknowingly furthered client's fraud).

In light of the above standard, the crime fraud exception to the attorney-client privilege and work product doctrine is easily satisfied. Defendants have established a prima facia case that the "bald sketch" was fabricated to support a false claim in this lawsuit and they are seeking documents relating to this issue alone. Plaintiff has not offered any substantive explanation in response to Defendants' prima facie showing beyond empty denials. Any documents within the cache reviewed by the Court have already been identified by Plaintiff as relating to the "bald sketch." Therefore, by definition, the documents at issue relate to the fraud and are thereby fall squarely within the crime fraud exception.

### <u>Plaintiff Engaged in a Fraudulent Scheme to Support Claims with Fabricated Evidence</u>

As detailed in Individual Defendants' May 12, 2021 Position Paper (ECF 184), the fraud here is obvious, though more context is provided below to illustrate that Defendants continue to develop additional evidence that the "bald sketch" was fabricated. Early in discovery, Plaintiffs represented that a document they Bates numbered as Rogers-File-118 ("Underlined/Highlighted Copy"), came from Mr. Bryant's trial attorney's file. *See* Pls.' 10/2/2020 Letter attached as Exhibit 1. As explained in ECF 184, the underlining and highlighting on the "bald sketch" prove that Rogers-File-118 was used as the source document from which the "bald sketch" was fabricated. *See* ECF 184 at 1-2. This alone constitutes a prima facie showing that the "bald sketch" was fabricated by Plaintiff or his agents in order to prosecute an illegitimate civil claim. *See* ECF 184-1. But additional analysis of the documents and discovery conducted to date reveals even more evidence of the fraud.

Plaintiff's initial production included what appears at first blush to be identical copies of the "bald sketch." The five copies of the bald sketch in Plaintiff's initial production are attached as Exhibit 2. But a closer examination reveals four iterations of the fraudulent "bald sketch" circulating in Plaintiffs' documents, each with a unique left edge of the suspect description, most strikingly apparent in the "Suspect" and "Reward" headings. *See* Demonstrative Chart attached as Exhibit 3. All four iterations show the same underlining that appears in the Underlined/Highlighted Copy.

In response to Defendant's Second Request for Production of Documents, Plaintiff tried to pawn off the "bald sketch" as if it was obtained from BPD by producing it under the Bates number BPD MPIA000020.[1] BPD MPIA000020 is attached as Exhibit 4. During Ms. Nethercott's deposition, she testified that Bryant NSB 002093 came from BPD in 2006. *See* Nethercott Dep. p. 142, Feb. 4, 2021 attached as Exhibit 5. But Bryant NSB 002093 and BPD MPIA000020 are not the same documents. The left margin of text in Bryant NSB 02093 is slightly narrower. *See* Demonstrative Chart attached as Exhibit 6. What is more, Ms. Nethercott testified that she copied Bryant NSB 02093 to make it lighter, creating the document produced as Bryant NSB 002094. Ex. 5 at 144-148. But even if Ms. Nethercott were confused about which document she received from BPD, it could not have been BPD MPIA000020. Bryant NSB 002736, a document that neither Plaintiff nor Ms. Nethercott ever represented as having come from BPD has a wider left margin than BPD MPIA000020. *See* Demonstrative Chart attached as Exhibit 7. In other words, it cannot be a copy of BPD MPIA000020. None of the "bald sketches" include the complete text of the suspect description, showing that there is no "original" bald sketch – every copy comes from another copy, each pointing back to Rogers-File-118 from Mr. Bryant's criminal attorney's file.

---

[1] Plaintiff added the Bates Stamp prefix "BPD MPIA" even though the prefix creates the false impression that the document was produced by BPD in response to an MPIA request.

**NR** NATHAN &
KAMIONSKI LLP

Plaintiffs used counsel to advance a fraudulent *Brady* claim based on fabricated evidence and then used production to legitimize the assertion that the "bald sketch" came from BPD by including it in their stack of documents they contend were produced to them by BPD. And Plaintiff's claims are still bolstered by the "bald sketch," as seen in Paragraph 34 of Plaintiff's Amended Complaint. (ECF 168) (alleging that "[s]everal other alternate or draft composite drawings were created but never disclosed… At least one of these alternate or draft composites depicted a suspect with no hair…"). Documents addressing the fabricated evidence thus bear a close relationship to Plaintiffs' scheme and the crime/fraud exception vitiates Plaintiffs' attorney-client privilege and fact work product assertions.

### Plaintiffs' Counsel's or Post-Conviction Counsel's Actions Show Knowledge of Fraud

Plaintiffs represented that their early production came from Ms. Nethercott's file. But the condition of the file after it was in Plaintiff's counsel's possession (*see* ECF 184 at 2-3 for discussion) raises distressing issues. During a physical inspection of the file that took place days after Ms. Nethercott's deposition, Individual Defendants discovered that the Underlined/Highlighted Copy (Rogers-File-118) had been removed from the documents that Plaintiffs represented as the trial file and had been replaced with a clean copy of the wanted flyer. Defs' 2/12/2021 Letter to Plts. attached as Exhibit 8. The clean copy was placed in the same location as previously occupied by Rogers-File-118. For the first time, a new version with underlines (but without highlights in the body of the paragraph) appeared in the files purported to be from BPD's MPIA response. *See id.* at 2; *see also* Demonstrative Chart attached as Exhibit 9. The Underlined/Highlighted version – marked as Rogers-File-118 was destroyed.

Additionally, Plaintiffs' initial production that they marked with the prefix "BPD MPIA" included only three composite sketches: one copy of the "bald sketch" (BPD MPIA000020) and two copies of the wanted flyer. These documents are attached as Exhibit 10. But during the inspection of the Ms. Nethercott's file in 2021, defendants found **twelve** copies of composite sketches including **two** versions of the wanted flyer that were not in plaintiffs' initial "BPD MPIA" production. The composite sketches from Plaintiff's UBIP (BPD MPIA) production are attached as Exhibit 11. Worse still, defendants found **three** copies of the "bald sketch" rather than the one once produced. All three copies of the "bald sketch" were of a version *different* from the one produced as BPD MPIA000020. *See* Demonstrative Chart attached as Exhibit 12. And every copy of the "bald sketch" in the UBIP (BPD MPIA) production was the same, all matching the version that Ms. Nethercott claimed she had received from BPD. *See* Demonstrative Chart attached as Exhibit 13. In fact, the copy that Ms. Nethercott testified to creating by photocopying it to make it lighter was nowhere in the UBIP (BPD MPIA) production. *See* Demonstrative Chart attached as Exhibit 14. No copies of the version of the "bald sketch" produced as BPD MPIA000020 were in the latest UBIP file scan and Rogers-File-118 is missing. The composite sketches from Plaintiff's UBIP (Trial File) and UBIP production are attached as Exhibit 15; *see also* Exhibit 11.

By removing (and destroying) Rogers-File-118 from the trial file and placing a similar version (underlined but highlighted) in the documents purportedly produced by BPD, Plaintiff or his agents sought to create the false impression that the "bald sketch" they fabricated came from BPD instead of the underlined and highlighted copy at Rogers-File-118. Replacing the iterations of the "bald sketch" that Plaintiffs initially produced with uniform copies could have eliminated questions about which side created the "bald sketch" if Defendants had not conducted the physical file inspection. These efforts to rewrite the "bald sketch" history exposes that Plaintiff or his agents were aware of the fraud advanced by the "bald sketch" and sought to cover it up. Thus, the crime/fraud exception applies to assertions of fact and opinion work product about the "bald sketch." *In re Grand Jury Subpoena*, 870 F.3d at 319.

**NATHAN &
KAMIONSKI LLP**

Respectfully Submitted,

<u>      /s/      </u>
Avi T. Kamionski, Bar No. 20703
Shneur Nathan, Bar No. 20707
Theresa Concepcion, Bar No. 21143
Matthew J. Mc Carter, Bar No.21032
Michael J. Elliker, Bar No. 20810
Jasmine R. England-Caesar, Bar No. 21515
Nathan & Kamionski LLP
33 W. Monroe St., Suite 1830
Chicago, IL 60603
Tel: (312) 612-1955
akamionski@nklawllp.com
snathan@nklawllp.com
tconcepcion@nklawllp.com
mmccarter@nklawllp.com
melliker@nklawllp.com
jasmine@nklawllp.com
*Attorneys for William Ritz and Barry Verger*